David M. Honigman (P33416)
dhonigman@manteselaw.com
Douglas L. Toering (P34329)
dtoering@manteselaw.com
Kenneth Chadwell (P39121)
Kchadwell@manteselaw.com
**MANTESE HONIGMAN P.C.**
*Attorney for Plaintiffs*
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: 248-457-9200
Fax: 248-457-9201

André E. Jardini, Bar No. 71335
aej@kpclegal.com
K.L. Myles, Bar No. 243272
klm@kpclegal.com
Michael D. Carr, Bar No. 322261
mdc@kpclegal.com
**KNAPP, PETERSEN & CLARKE**
*Attorney for Plaintiffs*
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone:  (818) 547-5000
Facsimile:  (818) 547-5329

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ESTATE OF WILLIAM D. PILGRIM, WALTER GOETZMAN, CHAD REESE, JEROME E. PEDERSON, AHMED J. CANNON, CHRISTOPHER CONSTANTINE, BRADLEY GRANT, JOHN PARSONS, ROBERT L. BRIGGS, ROBERT EDGAR, ROGER L. BROWNING, LYLE DUNAHOO, AARON CLARK, ALAN PELLETIER, EDWIN WILLIAM KRAUSE, FRANK JUZSWIK, S. GARRETT BECK, DAVID SHELDON, JAN ENGWIS, ADAM BALDUCCI, ALAN FERRER, JARED KILEY, JEFF KOLODZI, DEREK VAN DEN TOP, MORRIS SMITH, ANDRES FREY, SHAWN BAIN, JEFFREY M. MILLSLAGLE, ROBERT GEISS, TUAN BUI, MATHEW EVANS, DAVID WARD, DAVID  PENROD, DEVRY DAVIS, WILLIAM CHURCH, EDWIN ROJAS, | NO.   20-cv-10562 **CLASS ACTION COMPLAINT FOR DEFECTIVE VEHICLES** **DEMAND FOR JURY TRIAL** |

RICHARD JENKINS, JAMES          )
OSHEIM, JACK WOODALL, JOHN       )
LEBAR, RUSSELL CHRISTIANSEN,     )
VALENTE MORENO individuals, on   )
behalf of themselves and all others )
similarly situated,              )
                                 )
              *Plaintiffs*,       )
       v.                        )
                                 )
GENERAL MOTORS LLC and DOES 1    )
through 50, inclusive,           )
                                 )
              *Defendants*.       )
_____

## CLASS ACTION COMPLAINT FOR DEFECTIVE VEHICLES

## DEMAND FOR JURY TRIAL

### RECORDS PRESERVATION NOTICE

**You are hereby notified to preserve during the pendency of this action all records and documents in all forms and formats (digital, electronic, film, magnetic, optical, print, etc.) that are relevant or may lead to relevant information, and to notify your employees, agents and contractors that they are required to take appropriate action to do the same.**

# **TABLE OF CONTENT**

INTRODUCTION ............................................................................1

PARTIES...........................................................................................5

JURISDICTION................................................................................18

VENUE ............................................................................................19

CLASS ALLEGATIONS ................................................................19

    A.    Nationwide Class……………………………………..................19

    B.    State Law Classes………………………………………….......20

    C.    The Classes and Subclasses Meet Rule 23 Requirements…...........2121

CLAIMS FOR RELIEF ..........................................……………...25

    CLAIM 1 VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. Section 2301, et seq.)....................................................25

    CLAIM 2 NEGLIGENCE ........................................................29

    CLAIM 3 VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT (ALA. CODE § 8-19-1, et seq.)......................................32

    CLAIM 4 FRAUD BY CONCEALMENT ...................................38

    CLAIM 5 VIOLATIONS OF THE CONSUMER FRAUD ACT (Arizona Rev. Stat. § 44-1521, et seq.)...........................................................42

    CLAIM 6 FRAUD BY CONCEALMENT ...................................47

    CLAIM 7 VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201, et seq.)....................51

    CLAIM 8 FRAUD BY CONCEALMENT ...................................57

    CLAIM 9 VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (GA CODE ANNOTATED SECTION 10-1-390 ET. SEQ.)............60

    CLAIM 10 VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT (GEORGIA CODE ANNOTATED SECTION 10-1-370 ET SEQ.)........................................................................66

    CLAIM 11 FRAUD BY CONCEALMENT .................................72

    CLAIM 12 VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, et seq. and 720 ILCS 295/1A) ...........................................................................75

CLAIM 13 FRAUD BY CONCEALMENT ................................................81

CLAIM 14 VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3) ......................................................85

CLAIM 15 FRAUD BY CONCEALMENT ................................................91

CLAIM 16 BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (IND. CODE § 26-1-2-314).....................................95

CLAIM 17 VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. § 367.110, et seq.) .......................96

CLAIM 18 FRAUD BY CONCEALMENT ..............................................102

CLAIM 19 VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (MD. CODE COM. LAW § 13-101, et seq.) ...........106

CLAIM 20 FRAUD BY CONCEALMENT ..............................................111

CLAIM 21 BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MD. CODE COM. LAW § 2-314) .....................115

CLAIM 22 DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW  (MASS. GEN. LAWS CH. 93A, § 1, et seq.)…………………......................................................................116

CLAIM 23 FRAUD BY CONCEALMENT ..............................................122

CLAIM 24 BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (ALM GL. CH. 106, § 2-314)..............................126

CLAIM 25 VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (MICH. COMP. LAWS § 445.903, et seq.).............127

CLAIM 26 FRAUD BY CONCEALMENT ...........................................13432

CLAIM 27 BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MICH. COMP. LAWS § 440.2314)...............13737

CLAIM 28 VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973  (MONT. CODE ANN. § 30-14-101, et seq.) ...............................................................13939

CLAIM 29 FRAUD BY CONCEALMENT ...........................................14444

CLAIM 30 BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MONT. CODE § 30-2-314)...........................14848

CLAIM 31 VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT (N.J. STAT. ANN. § 56:8-1, et seq.)........................................14949

CLAIM 32 FRAUD BY CONCEALMENT ...........................................15555

iv

CLAIM 33 BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.J. STAT. ANN. § 12A:2-314) ...................159 59

CLAIM 34 VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT (OHIO REV. CODE ANN. § 1345.01, et seq.)..............................161 61

CLAIM 35 FRAUD BY CONCEALMENT ...........................................168 68

CLAIM 36 IMPLIED WARRANTY IN TORT .....................................172 72

CLAIM 37 VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, et seq.) ………………………………………………………………..173
73

CLAIM 38 FRAUD BY CONCEALMENT ...........................................179 79

CLAIM 39 BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (13 PA. CONS. STAT. ANN. § 2314) ...........183 83

CLAIM 40 VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. CODIFIED LAWS § 37-24-6) .................................................................184 84

CLAIM 41 FRAUD BY CONCEALMENT ...........................................190 90

CLAIM 42 BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY  (S.D. CODIFIED LAWS § 57A-2-314) .........194 94

CLAIM 43 VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT (TENN. CODE ANN. § 47-18-101, et seq.) .................................195 95

CLAIM 44 FRAUD BY CONCEALMENT ................................................201

CLAIM 45 VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES –CONSUMER PROTECTION ACT (TEX. BUS. & COM. CODE §§ 17.41, et seq.)...........................................................................204

CLAIM 46 FRAUD BY CONCEALMENT ................................................212

CLAIM 47 BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (TEX. BUS. & COM. CODE § 2.314) ...............216

CLAIM 48 VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT (UTAH CODE ANN. § 13-11-1, et seq.)...........................................217

CLAIM 49 FRAUD BY CONCEALMENT ................................................222

CLAIM 50 BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (UTAH CODE ANN. § 70A-2-314)....................226

CLAIM 51 VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT (VA. CODE ANN. 15 §§ 59.1-196, et seq.) ......................................228

v

CLAIM 52 FRAUD BY CONCEALMENT ...............................................233

CLAIM 53 BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (VA. CODE ANN. § 8.2-314) .............................237

CLAIM 54 VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE
PRACTICES ACT (WIS. STAT. § 110.18)................................................238

CLAIM 55 FRAUD BY CONCEALMENT ...............................................244

PRAYER FOR RELIEF ........................................................................248

DEMAND FOR JURY TRIAL .............................................................250

This complaint is brought by plaintiffs herein as a class action concerning purchasers or lessees of Corvette vehicles equipped with the LS7 7.0LV8 engine concerning model years 2006 to 2013.  Those vehicles have exhibited excessive valve guide wear which has led to engine failures and inspections and repairs.

## INTRODUCTION

1.      Plaintiffs bring this action for themselves and on behalf of all persons in selected states ("class members"), who purchased or leased 2013 Chevrolet Corvette 427 or 2006 – 2013 Chevrolet Corvette Z06 vehicles ("class vehicles) which were manufactured, distributed and sold by defendant General Motors LLC (hereinafter "defendant" or "New GM"), or manufactured, distributed or sold by General Motors Corporation (also known as Motors Liquidation Company) ("Old GM").

2.      New GM widely advertised the 7.0 liter V8 engine which was used in the 2013 Chevrolet Corvette 427 and 2006 – 2013 Chevrolet Corvette Z06 vehicles as being of the highest quality and durability.

3.      The engine in the class vehicles was subject to excessive valve guide wear, a condition which was well-known by Old GM and was and is known by New GM.

4.     Because of defects in the design manufacture and assembly of these subject engines installed in the class vehicles, the class vehicles, and their engines, are by their nature susceptible to frequent mechanical failure, which has occurred.

5.     The subject engines, when they fail, present a dire and significant safety danger to the operator that is likely to result in significant, serious, and life-threatening bodily harm, as oil leaks suddenly and in volume underneath the vehicle, under the rear tires which can lose traction.  Upon failure, the subject engines are subject to explosion, resulting in the ejection of engine fragments and other materials that can strike the driver of the subject vehicle, or other vehicles or drivers in the

6.     vicinity; and are subject to ignition, which engulfs the vehicle in flames, all while depriving the operator of brakes and power steering.

7.     Because of the defects in the design manufacture and assembly of the subject engines installed in the class vehicles, owners and lessees of the class vehicles have or will incur significant expense for inspection and/or repair of the class vehicles.

8.     Despite knowledge of the propensity of the subject engine to excessive valve guide wear, and the significant danger in operating the class vehicles, New GM has not issued a recall so that the class vehicles may be tested and repaired.  This failure to recall these defective and dangerous vehicles for this known defect has

occurred despite the recall by New GM of all subject vehicles from 2006 to 2013, for at least two other, less serious, defects.

9.     The defects which cause excessive valve guide wear are well-known and have been actively discussed by New GM. Yet, New GM has taken no steps to correct the deficiencies in the subject engine.

10.     Despite New GM's repeated assurances to members of the class of owners that the subject engines were performing as designed, the engines fail at a high rate.

11.     Even extremely low mileage class vehicles have measurable valve guide clearances far beyond service limits resulting in repairs at significant costs. Using the test specified by New GM, a high proportion of owners or lessees of class vehicles had out of specification valve guides on class vehicles built from 2006 to 2013.

12.     When confronted by multiple complaints concerning the above-described defects, New GM deflected complaints by insisting that "valve train noise" was an inherent feature of the subject engine, and that the subject engines are not defective.

13.     Further, New GM attempted to minimize the extent of any problems by falsely asserting that the problems arose from a single supplier and were limited to a short period of time from July 2008 to March 2009.  Even then, New GM

maintained that the condition was not truly an out of specification condition and that the condition had been remedied.

14.    As a result of customer complaints concerning the subject engines in the class vehicles, New GM implemented an investigation technique known as the "wiggle method," as a method to determine whether the valve guides were out of specification.

15.    When New GM determined that its adopted test would lead to more repairs and investigations than it wished to perform, the test was summarily and unreasonably rejected.

16.    In dealing with multiple complaints concerning the subject engine in the class vehicles, New GM acted, at all times, to deflect criticisms, defer investigations and repairs, and minimize the extent of the problems.

17.    During the time that New GM has temporized, minimizing the extent of the defect in the subject engines, class members have continued to suffer excessive valve train noise, out of specification valve guides and catastrophic engine failures.

18.    As a result of New GM's misconduct alleged herein, plaintiffs and the other owners and lessees of class vehicles have been harmed and have suffered actual damages, in that the class vehicles continue to experience mechanical failure due to the engine defect, and New GM has not come up with a permanent remedy for this

defect; nor has New GM instituted a recall of these vehicles.  Furthermore, owners and lessees of class vehicles have incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the engine defect.

19.    New GM is responsible, as alleged herein, for its own independent conduct as to all class vehicles and for its conduct and failings, as alleged herein. Also, New GM is responsible, as alleged herein, for its conduct and failings, specifically, related to model years of 2009 (for vehicles manufactured by New GM) to 2013 and all model years of class vehicles purchased as used cars after July 10, 2009.

## PARTIES

## PLAINTIFFS

### Alabama

20.    Plaintiff Walter Goetzman (hereinafter "Goetzman") is a resident of Alabama.  Plaintiff Goetzman has owned a 2007 Corvette Z06 vehicle.

21.    Plaintiff Chad Reese (hereinafter "Reese") is a resident of Alabama. Plaintiff Reese owns a Corvette 2006 Z06 automobile.  The vehicle has an LS7 engine.  The vehicle was purchased in October 2014.  The vehicle suffered a catastrophic engine failure when the engine dropped the valve.  This vehicle is defective and subject to excessive valve guide wear.

### Arizona

22.     The Estate of William D. Pilgrim is the estate of William D. Pilgrim (hereinafter "Pilgrim") who is deceased and resided in the State of Arizona.  Plaintiff Pilgrim owns a 2008 Corvette Z06 vehicle with a 7.0L 427 engine.  The vehicle was purchased on January 29, 2014.  The vehicle has exhibited excessive valve train noise.  The vehicle failed GM's wiggle test.  Pilgrim has incurred repair costs and other harm due to the engine defect in this vehicle.

23.     Plaintiff Jerome E. Pederson (hereinafter "Pederson") is a resident of Arizona.  Plaintiff Pederson owns a 2009 Corvette Z06 vehicle with a 7.0 LV8 engine.  This vehicle was purchased in July 2013.  This vehicle is defective and subject to excessive valve guide wear.

24.     Ahmed J. Cannon (hereinafter "Cannon") is a resident of Arizona. Plaintiff Cannon owns a 2006 Corvette Z06 with a 427 cubic inch LS7 engine.  The vehicle was purchased on December 8, 2008, and was covered by a GM factory warranty.  No repairs have been made by GM.  The vehicle has exhibited signs of excessive valve guide wear including ticking sound noises which are increasing.

25.     Plaintiff Cannon is also the owner of a 2012 Camaro SS with a 7.0 liter 427 cubic inch LS7 engine.  The engine suffered a failure.  The engine has suffered a catastrophic failure due to the defects.

26.     Plaintiff Tuan Bui (hereinafter "Bui") is a resident of Arizona.  Plaintiff Bui owns a 2008 Corvette Z06 vehicle with a 7.0 liter engine.  The vehicle was

purchased in May 2012. The vehicle has suffered a catastrophic engine failure. When driving on the highway, the engine blew up, the valve dropped through the eighth cylinder and imperiled plaintiff Bui.

27.     Plaintiff Jack Woodall (hereinafter "Woodall") is a resident of Arizona. Plaintiff Woodall is the owner of a Corvette Z06 vehicle with a 7.0 liter 427 engine. The vehicle has exhibited the defects noted herein, it is defective and has exhibited excessive valve guide wear.

28.     Plaintiff Russell Christiansen (hereinafter "Christiansen") is a resident of Arizona. Plaintiff Christiansen is the owner of a 2008 Corvette Z06 vehicle with a 7.0 liter 427 cubic inch engine. The vehicle was purchased used in July 2017 with 44,363 miles on the odometer. On February 16, 2020, with 56,000 miles on the odometer, the vehicle's engine suffered a catastrophic failure when a valve dropped and a connecting rod blew through the engine block.

**California**

29.     Plaintiff Valente Moreno (hereinafter "Moreno") is a resident of California. Plaintiff Moreno owns a 2007 Corvette Z06 vehicle with a 427 LS7 7.0L V8 engine, purchased in April 2016 with 29,373 miles on the odometer. The vehicle suffered a catastrophic engine failure due to valve failure in February 2018 with 32,846 miles on the odometer.

7

**Florida**

30.   Plaintiff Christopher Constantine (hereinafter "Constantine") is a resident of Florida.  Plaintiff Constantine owns a 2006 Corvette Z06 vehicle with a 7.0L LS7 engine.  This vehicle was purchased in December 2010.  The valve guides were subject to excessive wear and were repaired in 2013, causing expense to be incurred.

31.   Plaintiff Bradley Grant (hereinafter "Grant") is a resident of Florida.  Plaintiff Grant owns a 2008 Corvette Z06 vehicle with a 7.0 liter engine.  A GM protection plan expired on September 30, 2015, without necessary repairs having been made by GM.  The vehicle has valve guides which are subject to excessive wear.

32.   Plaintiff John Parsons (hereinafter "Parsons") is a resident of Florida.  Plaintiff Parsons owns a class vehicle.  This vehicle suffers from the described defect and expense has been incurred for inspection and repair.

33.   Plaintiff Robert L. Briggs (hereinafter "Briggs") is a resident of Florida.  Plaintiff Briggs owns a 2007 Corvette Z06.  The vehicle has a 7.0 liter engine.  The vehicle was purchased in July 2006.  The vehicle was inspected and the inspection verified that the valves were out of speculation and repairs were necessary.  This vehicle is defective and subject to excessive valve guide wear.

34.   Plaintiff Mathew Evans (hereinafter "Evans") is a resident of Florida.

8

Plaintiff Evans owns a 2007 Corvette Z6 with a 427 cubic inch engine.  The vehicle was purchased on March 18, 2015.  The vehicle had exhibited signs of excessive valve wear, noise around the heads.  Thereafter, when plaintiff Evans was driving on the interstate at 75 mph, the engine suffered a catastrophic failure when the car lost all power and blew the side of the engine out.

### **Georgia**

35.    Plaintiff Robert Edgar (hereinafter "Edgar") is a resident of Georgia. Plaintiff Edgar owns a 2007 Corvette Z06.  The vehicle has a 7.0 liter V8 engine. The vehicle was purchased on December 4, 2014.  The vehicle is exhibiting signs of excessive valve guide wear.

36.    Plaintiff Roger L. Browning (hereinafter "Browning") is a resident of Georgia.  Plaintiff Browning owns a 2008 Corvette Z06 vehicle with a 7.0 liter V8 engine purchased on October 26, 2008  The vehicle has been inspected and the inspection verified that the valve guides were excessively warn, such that repairs were necessary.  This vehicle is defective and subject to excessive valve guide wear.

### **Illinois**

37.    Plaintiff Lyle Dunahoo (hereinafter "Dunahoo") is a resident of Illinois. Plaintiff Dunahoo owns a 2009 Corvette Z06 vehicle with a 7.0 engine.  This vehicle was purchased in January 2012.  The vehicle has out of specification findings as to valve guide clearances on eight intake valves and eight exhaust valves.

### Indiana

38.    Plaintiff Aaron Clark ("Clark") is a resident of Indiana.  Plaintiff Clark has owned a 2008 Corvette Z06 vehicle, with a 7.0 liter LS7 engine.  This vehicle is defective and subject to excessive valve guide wear.

### Kentucky

39.    Plaintiff David Ward (hereinafter "Ward") is a resident of Kentucky. Plaintiff Ward is the owner of a 2011 Corvette Z6.  The vehicle was purchased in September 2011.  The vehicle has exhibited signs of excessive valve guide wear and has undergone repair for that problem.

### Maryland

40.    Plaintiff David Penrod (hereinafter "Penrod") is a resident of the state of Maryland.  Plaintiff is the owner of a 2006 Corvette Z6 vehicle with a 7 liter engine.  The vehicle was purchased on March 3, 2012. This vehicle is defective and subject to excessive valve guide wear.

### Massachusetts

41.    Plaintiff Alan Pelletier (hereinafter "Pelletier") is a resident of Massachusetts.   Plaintiff Pelletier is the owner of a 60th Anniversary 427 Convertible Corvette automobile, manufactured in 2013, and purchased new in 2013.  The vehicle has a 7.0 liter 427 cubic inch engine.  The vehicle has experienced excessive valve train noise caused by excessive valve guide wear.  This vehicle is

defective and subject to excessive valve guide wear.

**Michigan**

42.    Plaintiff Edwin William Krause (hereinafter "Krause") is a resident of Michigan.  Plaintiff Krause has owned a 2009 Corvette Z06 vehicle purchased used in April 2014 with 3,021 miles on the odometer.  Shortly after purchase, Krause heard about issues with the LS7 engine, and discovered GM Service Bulletin #13-06-01-001, which addresses valve guide wear issues and instructs dealerships to replace the worn heads with new GM LS7 heads.  Krause immediately had the engine inspected, and it was discovered that all intake and exhaust valves were outside of the GM Service Bulletin specification, with the #8 valve so far out of spec that it could not be measured by the gauge.  Krause requested that GM cover a permanent repair under his powertrain warranty, which was denied.  This vehicle is defective and subject to excessive valve guide wear.

43.    Plaintiff Frank Juzswik (hereinafter "Juzswik") is a resident of Michigan.  Plaintiff Juzswik owns a 2009 Corvette Z06, purchased used from Don Moore Chevrolet in Owensboro, KY in May 2015.  The vehicle has a 7.0 liter engine. At the time of purchase, the vehicle had 24,400 miles on the odometer, and Juzswik was informed by the dealership that the car had not had any work done other than routine maintenance.  After discovering that many similar vehicles had had issues with premature valve guide wear and catastrophic failure, Juzswik had the

maintenance history pulled, which revealed a "laundry list" of issues, including an engine replacement in 2011 due to a dropped valve at 10,104 miles. Juzswik then had the engine inspected and the valves were out of specification. This vehicle is defective and subject to excessive valve guide wear.

44.     Plaintiff S. Garrett Beck (hereinafter "Beck") is a resident of Michigan. Plaintiff Beck owns a 2013 427 Corvette convertible, with a 427 cubic inch V8 engine. The vehicle was purchased in January 2013. The valve guides were inspected and found to have excessive wear. This vehicle is defective and subject to excessive valve guide wear.

### **Montana**

45.     Plaintiff David Sheldon (hereinafter "Sheldon") is a resident of Montana. Plaintiff Sheldon owns a 2009 Corvette Z06 with a 7.0L engine. The vehicle was purchased on October 15, 2012. Valve guides were inspected and were out of specification, resulting in costly repairs. This vehicle is defective and subject to excessive valve guide wear.

46.     Plaintiff Jan Engwis ("hereinafter "Engwis") is a resident of Montana. Plaintiff Engwis owns a 2007 Corvette Z06. The vehicle has a LS 700 liter 505 horsepower engine. The car was purchased on August 5, 2006. The car was covered by a five year, 100,000 mile GM original engine power train warranty. The vehicle

suffered a catastrophic engine failure due to valve failure.  This vehicle is defective and subject to excessive valve guide wear.

### New Jersey

47.    Plaintiff Adam Balducci (hereinafter "Balducci") is a resident of New Jersey.  Plaintiff Balducci is the owner of a 2007 Corvette Z06 vehicle.  The vehicle has a 427 cubic inch V8 engine.  The vehicle was purchased in November 2006, and covered by a five year, 50,000 mile warranty.  The vehicle suffered a catastrophic engine failure which was repaired in late 2009.  This vehicle is defective and subject to excessive valve guide wear.

48.    Plaintiff Alan Ferrer (herein "Ferrer") is a resident of New Jersey.  Plaintiff Ferrer is the owner of a 2006 Corvette Z06.  The vehicle has a 7.0 liter engine.  The vehicle was purchased on August 2, 2015.  This vehicle is defective and subject to excess valve guide wear.

### Ohio

49.    Plaintiff Jared Kiley (hereinafter "Kiley") is a resident of Mason, Ohio.  Plaintiff Kiley owns a 2006 Corvette Z06 vehicle with a 7.0L engine.  This vehicle was purchased on August 11, 2014.  The vehicle's guides were measured and found to be significantly out of specification.  Expense was incurred for inspection and repair of the engine.  This vehicle is defective and subject to excessive valve guide wear.

13

**Pennsylvania**

50.    Plaintiff Jeff Kolodzi (hereinafter "Kolodzi") is a resident of Pennsylvania.  Plaintiff Kolodzi owns a 2008 Corvette Z06 vehicle with a 427 c.i. engine.  The vehicle was purchased in January 2013.  Valves were inspected and found to be out of specification resulting in expenses incurred.

**South Dakota**

51.    Plaintiff Derek Van Den Top (hereinafter "Van Den Top") is a resident of South Dakota.  Plaintiff Van Den Top is the owner of a 2006 Corvette Z06.  The vehicle has a 7.0 liter LS7 engine.  The vehicle was purchased on March 27, 2008.  The vehicle was covered at the time of purchase by a GM warranty.  The vehicle suffered a total engine failure in 2012, requiring a new engine.  This vehicle is defective and subject to excessive valve guide wear.

**Tennessee**

52.    Plaintiff Morris Smith (hereinafter "Smith") is a resident of Tennessee.  Plaintiff Smith has owned a 2009 Corvette Z06 vehicle purchased in 2010.  This vehicle is defective and subject to excessive valve guide wear.

**Texas**

53.    Plaintiff Andres Frey (hereinafter "Frey") is a resident of Texas.  Plaintiff Frey owns a 2008 Corvette Z06 vehicle with a 7.0L 427 c.i. engine.  Valve

guides were found on inspection to be significantly out of specification, resulting in expensive repairs.

54.   Plaintiff Shawn Bain (hereinafter "Bain") is a resident of Texas. Plaintiff Bain owns a 2007 Corvette Z06.  The vehicle has a 7.0LS7 427 engine.  The vehicle was purchased on May 30, 2015.  The engine in the vehicle suffered a catastrophic failure caused when the engine dropped a valve and blew up.  This vehicle is defective and subject to excessive valve guide wear.

55.   Plaintiff Jeffrey M. Millslagle (hereinafter "Millslagle" is a resident of Texas.  Plaintiff Millslagle is the owner of a 2008 Z06 Corvette vehicle.  The vehicle has a 7.0 liter 427 cubic inch engine.  The vehicle was purchased in July 2014.  The vehicle suffered a catastrophic engine failure when a valve exploded through the head and engine block resulting in total engine failure.  This vehicle is defective and subject to excessive valve guide wear.

56.   Plaintiff Robert Geiss (hereinafter "Geiss") is a resident of Texas. Plaintiff Geiss is the owner of a 2008 Chevrolet Corvette Z06.  The vehicle has a 427 cubic inch 7 liter engine.  The vehicle was purchased on August 15, 2011.  The vehicle suffered a catastrophic engine failure on April 10, 2014, which destroyed the engine.  This vehicle is defective and subject to excessive valve guide wear.

57.   Plaintiff John Lebar (hereinafter "Lebar") is a resident of Texas. Plaintiff Lebar owns a 2006 Corvette Z06 vehicle with a 7.0L 427 c.i. engine,

purchased as a used car in or around 2008.  Valve guides were found on inspection to be significantly out of specification, resulting in expensive repairs.

### Utah

58.    Plaintiff Devry Todd Davis (hereinafter "Davis") is a resident of the state of Utah.  Plaintiff Davis is the owner of a 2009 Chevrolet Corvette Z6 with an LS7 engine.  Plaintiff Davis purchased the vehicle on November 20, 2015.  The vehicle suffered a catastrophic engine failure which required significant expensive repair.

### Virginia

59.    Plaintiff William Church (hereinafter "Church") is a resident of Virginia.  Plaintiff is the owner of a 2007 Corvette Z6 vehicle with a 427 cubic inch engine.  The vehicle exhibited excessive engine noise.  Soon thereafter, the engine failed when a valve dropped from the head into the number 1 cylinder causing a catastrophic engine failure.

60.    Plaintiff Edwin Rojas (hereinafter "Rojas") is a resident of Virginia.  Plaintiff is the owner of a 2006 Corvette Z6 vehicle with a 7.0 liter 427 cubic inch LS7-V8 engine.  The vehicle was purchased on December 21, 2012.  The vehicle suffered an engine failure when the exhaust valve broke off on the sixth cylinder and destroyed the piston and damaged the engine.  Extensive repair costs were incurred.

**Wisconsin**

61.     Plaintiff Richard Jenkins (hereinafter "Jenkins") is a resident of Wisconsin.  Plaintiff Jenkins is the owner of a 2008 Corvette Z6 vehicle with a 7.0 liter engine.  The vehicle was purchased on June 8, 2017.  The vehicle has suffered a complete engine failure due to the failure of the number 6 cylinder exhaust valve.  Significant expense has been incurred for engine repair.

62.     Plaintiff James Osheim (hereinafter "Osheim") is a resident of Wisconsin.  Plaintiff Osheim owns a 2007 Corvette Z6 vehicle with a 7.0 liter engine.  The vehicle was purchased in 2009.  The engine suffered a catastrophic failure after exhibiting ticking sounds from the motor.

**DEFENDANTS**

63.     Defendant General Motors LLC ("New GM or defendant") is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan.  The sole member and owner of General Motors LLC is General Motors Holding LLC.  General Motors Holding LLC is a Delaware limited liability company with its principal place of business in the State of Michigan.  The sole member and owner of General Motors Holding LLC is General Motors Company, which is a Delaware corporation with its principal place in the State of Michigan, and is a citizen of the States of Delaware and Michigan.

17

64.     New GM was incorporated in 2009 and, effective on July 10, 2009, acquired substantially all assets and assumed certain liabilities of General Motors Corporation ("Old GM") through a section 363 sale under Chapter 11 of the U.S. Bankruptcy Code.

65.     It is undisputed that New GM had express obligations, as well as obligations by law, to comply with the certification, reporting and recall requirements of the National Traffic and Motor Vehicle Act and the Transportation Recall Enhancement Accountability and Documentation Act.

## JURISDICTION

66.     This is a class action.

67.     Plaintiffs, other than Krause, Juzswik, and Beck, are citizens of states different from the home state of defendant.  Members of the plaintiff class are citizens of states different than defendant.

68.     On information and belief, aggregate claims of individual class members exceed $5,000,000, inclusive of interest and costs.

69.     Jurisdiction over all Plaintiffs is proper in this Court pursuant to 28 U.S.C. section 1332(d).

18

## VENUE

70.     New GM has engaged in unfair business practices directed at/or causing harm to persons residing, located or doing business in this district and in the United States.

71.     Defendant maintains its principal place of business in this district, and as such, is subject to personal jurisdiction here.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. section 1391(d).

72.     In addition, a substantial part of the events or omissions giving rise to these claims occurred in this district.

73.     Venue is proper in this Court pursuant to 20 U.S.C. 1391.

## CLASS ALLEGATIONS

**A.     Nationwide Class**

74.     Plaintiffs seek to certify a nationwide class pursuant to Fed. R. Civ. Pro. 23(a) and (b)(3) for violation of the Magnuson-Moss Warranty Act and for negligence pursuant to claims 1 and 2 herein to be defined as follows (the "Nationwide Class"):

> All persons located in the United States who purchased or leased a class vehicle at any time from 2006 to the present, and who (1) still own or lease a class vehicle or (2) sold a class vehicle at any time from July 10, 2009 to the present.  Class vehicles include all Chevrolet Corvette 427 or Corvette Z06

vehicles equipped with 7.0 liter engines, and other vehicles manufactured by GM or New GM with the LS7 engine.  Excluded from each of the class and subclasses are New GM, its employees co-conspirators or officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of New GM, New GM dealers, class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship of any such persons.

**B.**     **State Law Classes**

75.     Plaintiffs allege claims under the laws of the following listed states: Alabama, Arizona, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Montana, New Jersey, Ohio, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Virginia and Wisconsin, "or listed states." As to each listed state in this paragraph, the State Sub-Class is defined as follows:

All persons who purchased or leased a class vehicle at any time from 2006 to the present, and who (1) still own or lease a class vehicle or (2) sold a class vehicle at any time from July 10, 2009 to the present.  Class vehicles include all Chevrolet Corvette 427 or Corvette Z06 vehicles equipped with 7.0 liter engines, and other vehicles manufactured by GM or New GM with the LS7 engine. Excluded from each of the class and subclasses are New GM,

20

its employees co-conspirators or officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates of New GM, New GM dealers, class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship of any such persons.

## C.   The Classes and Subclasses Meet Rule 23 Requirements

76.   Plaintiffs are informed and believe that there are approximately 28,000 class vehicles nationwide and such vehicles exist in each listed state.  Individual joinder of all class members is impracticable.

77.   The class can be readily identified using registration records, sales records, production records, and other information kept by New GM or third parties in the usual course of business within their control.

78.   Questions of law and fact are common to each of the classes and subclasses and predominate over questions affecting only individual members, including the following:

(a)   Whether Chevrolet Corvette 427 and Corvette Z06 class vehicles equipped with 7.0 liter V8 engines suffer from engine valve guide defects.

(b)   Whether New GM was aware of the defects, and concealed the defects from regulators, plaintiffs, and the class;

(c)     Whether New GM misrepresented to class vehicle purchasers that the class vehicles are safe, reliable and of high quality;

(d)     Whether New GM misrepresented itself as a reputable manufacturer that values quality in its vehicles and stands behind its vehicles after they are sold;

(e)     Whether New GM actively encouraged the concealment of known defects from regulators and consumers;

(f)     Whether New GM engaged in fraudulent concealment;

(g)     Whether New GM engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the class vehicles had serious defects.

(h)     Whether New GM violated various state consumer protection statutes.

(i)     Whether the 7.0 liter V8 engines contained within the class vehicles were unfit for the ordinary purposes for which they were used in violation of the implied warranty of merchantability;

(j)     Whether New GM's unlawful, unfair, fraudulent and/or deceptive practices harmed plaintiffs and the members of the class.

(k)     Whether plaintiffs and the members of the class are entitled to equitable and/or injunctive relief;

22

(l)    What aggregate amounts of statutory penalties, as available under the laws of certain listed states, are sufficient to punish and deter New GM and to vindicate statutory and public policy, and how such policies should most equitably be distributed among class members; and

(m)    Whether any and all applicable limitation periods are tolled by acts of fraudulent concealment.

(n)    Whether New GM has a duty to inspect and repair class vehicles due to significant and continuing safety concerns; and

(o)    Whether New GM has a duty to recall class vehicles based on significant and continuing safety concerns.

79.    Plaintiffs' claims are typical of the claims of the class members and arise from the same course of conduct by New GM.  The relief plaintiffs seek is typical of the relief sought for the absent class members.

80.    Plaintiffs will fairly and adequately represent and protect the interests of all absent class members.  Plaintiffs are represented by counsel competent and experienced in product liability, consumer protection, and class action litigation.

81.    A class is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the individual class members is impracticable because the damages suffered by each individual class member may be relatively small.  The expense and burden of individual litigation would make it

23

very difficult or impossible for individual class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.  Rule 23 provides the Court with authority and flexibility to maximize the benefits of the class mechanism and reduce management challenges.  The Court may, on motion of plaintiffs or on its own determination, utilize the processes of Rule 23(c)(4) and or (c)(5) to certify common questions of fact or law and to designate subclasses.

82.    The prosecution of separate actions by the individual class members would create a risk of inconsistent or varying adjudications for individual class members, which would establish incompatible standards of conduct for New GM.  The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the right of each class member.

83.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Plaintiffs anticipate providing appropriate notice to be approved by the Court after discovery into the size and nature of the class.  Absent a class action, most class members would likely find the cost of litigating their claims prohibitively high, and would therefore have no effective remedy at law.  Because of the relatively small size of the individual class members claims, it is likely that only a few class members

could afford to seek legal redress for New GM's misconduct.  Absent a class action, class members will continue to incur damages and New GM's misconduct will continue without remedy.

## CLAIMS FOR RELIEF

## CLAIM 1
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. Section 2301, et seq.)

84.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

85.     Plaintiffs bring this Count on behalf of purchasers or lessees of class vehicles located in the United States who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

86.     This Court has jurisdiction to decide claims brought under 15 U.S.C. 2301 by virtue of 28 U.S.C. section 1332(a) – (d).

87.     The class vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(1).

88.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(3).  They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

89.    New GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(4) – (5).

90.    15 U.S.C. section 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

91.    New GM provided plaintiffs and the other class members with an implied warranty of merchantability in connection with the purchase or lease of their New GM-manufactured vehicles on or after July 10, 2009, that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301(7).  As a part of the implied warranty of merchantability, New GM warranted that the New GM-manufactured class vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured and marketed and packaged and labeled.

92.    New GM breached its implied warranties as described in more detail above and is therefore, liable to plaintiffs and the class pursuant to 15 U.S.C. section 2310(d)(1).  Without limitation, the New GM-manufactured class vehicles share common design defects in that they are defectively designed and manufactured to permit excessive valve wear which results in sudden failure during ordinary operation, leaving occupants of the class vehicles vulnerable to crashes, serious injury, and death.

26

93.     In its capacity as a warrantor, New GM had knowledge of the inherent defects in the New GM-manufactured class vehicles.  Any effort by New GM to limit the implied warranties in a manner that would exclude coverage of the New GM-manufactured class vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the class vehicles is null and void.

94.     Any limitations New GM might seek to impose on its warranties are procedurally unconscionable.  There was unequal bargaining power between New GM and the plaintiffs and the other class members as, at all times of purchase and lease of New GM-manufactured class vehicles, plaintiffs and the other class members had no other options for purchasing warranty coverage other than directly from New GM.

95.     Any limitations New GM might seek to impose on its warranties are substantively unconscionable.  New GM knew that the New GM-manufactured class vehicles were defective and would continue to pose risks after the warranties purportedly expired.  New GM failed to disclose these defects to plaintiffs and the other class members.  Thus, New GM's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

96.     Plaintiffs and each of the other class members have had sufficiently direct dealings with either New GM or its agents (dealerships) to establish a privity of contract between New GM on the one hand, and plaintiffs and each of the other

class members, on the other hand.  Nonetheless, privity is not required here because plaintiffs and each of the other class members are intended third party beneficiaries of contracts between New GM and its dealers, and specifically, of New GM's implied warranties. The dealers were not intended to be the ultimate consumers of the New GM-manufactured class vehicles and have no rights under the warranty agreements provided with the New GM-manufactured class vehicles; the warranty agreements were designed for and intended to benefit consumers.  Finally, privity is also not required because the New GM-manufactured class vehicles are dangerous instrumentalities due to the aforementioned defects and non-conformities.

97.     Pursuant to 15 U.S.C. section 2310(e), plaintiffs are entitled to bring this class action and are not required to give New GM notice and an opportunity to cure until such time as the Court determines the representative capacity of plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

98.     The amount in controversy of plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. 2310(d)(2), plaintiffs and other class members are entitled to recover a sum equal to

the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by plaintiffs and the other class members in connection with the commencement and prosecution of this action.

99.    Further, plaintiffs and the class are also entitled to equitable relief under 15 U.S.C. section 2310(d)(1).  Based on New GM's continuing failures to fix the known defects New GM-manufactured class vehicles, plaintiffs seek a declaration that New GM has not adequately implemented its recall commitments and requirements and general commitments to fix its failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted. Plaintiffs also seek a determination that New GM is obligated to provide warranty services beyond the time specified in said warranties, based on the facts as alleged herein.  Plaintiffs also seek the establishment of a New GM funded program for plaintiffs and class members with New GM-manufactured class vehicles to recover out-of-pocket costs incurred in attempting to rectify the defects in their vehicles.

## CLAIM 2
## NEGLIGENCE

100.   Plaintiffs bring this Count on behalf of purchasers or lessees of class vehicles located in the United States who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

101.   GM and New GM  have designed, manufactured, sold or otherwise placed in the stream of commerce class vehicles which are defective, as set forth above.

102.   After July 2009, New GM had a duty to design and manufacture a product that would be useful for its intended and foreseeable uses and users, including the use to which its products were put by plaintiffs and other members of the negligence subclasses.

103.   New GM breached its duties to plaintiffs and the other members of the negligence subclasses because New GM was negligent in the design, development and manufacture and testing of the class vehicles, and New GM is responsible for this negligence.

104.   New GM was negligent in the design, development, manufacture and testing of the class vehicles because it knew, or in the exercise of reasonable care should have known, that the vehicles equipped with a 7.0 liter V8 engine were defective and posed an unreasonable risk of catastrophic engine failure with a risk of death or seriously bodily injury to plaintiffs and other members of the negligence subclasses, passengers, other motorists, pedestrians and the public at large.

105.   Plaintiffs, individually and on behalf of the other members of the negligence subclasses, rely upon Restatement (second) of Torts section 395.

106.   New GM further breached it duties to plaintiffs and the other members of the negligence subclasses by supplying directly or through a third person defective vehicles to be used by such foreseeable persons as plaintiffs and the other members of negligence subclasses.

107.   New GM knew, or had reason to know, that the vehicles were likely to suffer a catastrophic engine failure and were likely dangerous for the use to which they were supplied.

108.   New GM failed to exercise reasonable care to inform customers of the dangerous condition or of the facts under which the vehicles are likely to be dangerous.

109.   New GM had a continuing duty to warn and instruct the intended foreseeable users of class vehicles, including plaintiffs and the other members of the negligence subclasses, of the defective condition of the vehicles and the risk attended to using the vehicles.  Plaintiffs and other members of the negligence subclass were entitled to know that the vehicles, in their ordinary operation, were not reasonably safe for their intended and ordinary purposes and uses.

110.   New GM knew or should have known of the defects described herein. New GM breached it duty to plaintiffs and other members of the negligence subclasses because it failed to warn and instruct the intended foreseeable users of

vehicles of the defective conditions of vehicles, and the risk attended to using vehicles.

111.   As a direct and proximate result of New GM's negligence, plaintiffs and the other members of the negligence subclasses suffered damages.

## ALABAMA

### CLAIM 3
### VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (ALA. CODE § 8-19-1, et seq.)

112.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

113.   This claim is brought solely on behalf of purchases or lessees of class vehicles who are Alabama residents (the "Alabama Class").

114.   Plaintiffs and the Alabama Class are "consumers" within the meaning of ALA. CODE § 8-19-3(2).

115.   Plaintiffs, the Alabama Class, and New GM are "persons" within the meaning of ALA. CODE § 8-19-3(5).

116.   The class vehicles are "goods" within the meaning of ALA. CODE § 8-19-3(3).

117.   New GM was and is engaged in "trade or commerce" within the meaning of ALA. CODE § 8-19-3(8).

118.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA")

declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." ALA. CODE § 8-19-5. New GM engaged in deceptive business practices prohibited by the Alabama DTPA, including: representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard, quality, and grade when they are not; advertising class vehicles with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving class vehicles has been supplied in accordance with a previous representation when it has not; and engaging in other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

119. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles sold on or after July 10, 2009.

120.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

121.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

122.   By failing to disclose and by actively concealing the many defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Alabama DTPA.

123.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New

GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

124.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

125.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

126.   The many material defects in the class vehicles were not readily discoverable by consumers.

127.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Alabama Class.

128.   New GM knew or should have known that its conduct violated the Alabama DTPA.

129.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

130.  New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)  Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)  Intentionally concealed the foregoing from Plaintiffs; and/or

(c)  Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

131.  Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

132.  New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Alabama Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an

otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

133.   Plaintiffs and the Alabama Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

134.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Alabama DTPA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

135. As a direct and proximate result of New GM's violations of the Alabama DTPA, Plaintiffs and the Alabama Class have suffered injury-in-fact and/or actual damage.

136. Pursuant to ALA. CODE § 8-19-10, Plaintiffs and the Alabama Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $100 for each Plaintiff and each Alabama Class member.

137. Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the ALA. CODE § 8-19-1, et seq.

## CLAIM 4
## FRAUD BY CONCEALMENT

138. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

139. This claim is brought on behalf of purchasers or lessees of class vehicles who are Alabama residents (the "Alabama Class").

140. New GM concealed and suppressed material facts concerning the quality of the class vehicles.

141. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

38

142.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

143.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

144.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Alabama Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to

provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Alabama Class.

145.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Alabama Class.

146.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Alabama Class and conceal material information regarding defects that exist in the class vehicles.

147.   Plaintiffs and the Alabama Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Alabama Class's actions were justified. New

GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Alabama Class.

148.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Alabama Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

149.   The value of all Alabama Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

150.   Accordingly, New GM is liable to the Alabama Class for damages in an amount to be proven at trial.

151.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Alabama Class's

rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## ARIZONA

### CLAIM 5
### VIOLATIONS OF THE CONSUMER FRAUD ACT
### (Arizona Rev. Stat. § 44-1521, et seq.)

152.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

153.   This claim is brought only on behalf of Class Members who are Arizona residents (the "Arizona Class").

154.   Plaintiffs, the Arizona Class and New GM are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), ARIZ. REV. STAT. § 44-1521(6).

155.   The class vehicles are "merchandise" within the meaning of ARIZ. REV. STAT. § 44-1521(5).

156.   The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . of any merchandise whether or not any person has in fact been misled, deceived or

damaged thereby, is declared to be an unlawful practice." ARIZ. REV. STAT. § 44-1522(A).

157.   New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles sold on or after July 10, 2009.

158.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

159.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

160.   By failing to disclose and by actively concealing the many defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Arizona CFA.

161.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above.  New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

162.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

163.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

164.   The many material defects in the class vehicles were not readily discoverable by consumers.

165. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Arizona Class.

166. New GM knew or should have known that its conduct violated the Arizona CFA.

167. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

168. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these

45

representations.

169.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

170.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Arizona Class.   A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

171.   Plaintiffs and the Arizona Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.   Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.   Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

172.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of

those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Arizona CFA.  And, in any event, all class vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

173.   The recalls and repairs instituted by New GM have not been adequate.

174.   As a direct and proximate result of New GM's violations of the Arizona CFA, Plaintiffs and the Arizona Class have suffered injury-in-fact and/or actual damage.

175.   Plaintiffs and the Arizona Class seek monetary relief against New GM as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory in the amount of $100 for each Plaintiff and each Arizona Class Member. Plaintiffs and the Arizona Class also seek punitive damages because New GM engaged in aggravated and outrageous conduct with an evil mind.

176.   Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## CLAIM 6
## FRAUD BY CONCEALMENT

177.   Plaintiffs reallege and incorporate by reference all paragraphs as though

fully set forth herein.

178.   This claim is brought on behalf of Class Members who are Arizona residents (the "Arizona Class").

179.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

180.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

181.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

182.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

183.   New GM had a duty to disclose the defects in the class vehicles because

they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Arizona Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Arizona Class.

184.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Arizona Class.

185.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Arizona Class and conceal material information regarding defects that exist in the class vehicles.

186.   Plaintiffs and the Arizona Class were unaware of these omitted material

facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Arizona Class's actions were justified.  New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Arizona Class.

187.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Arizona Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

188.   The value of all Arizona Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the

Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

189.    Accordingly, New GM is liable to the Arizona Class for damages in an amount to be proven at trial.

190.    New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Arizona Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## **FLORIDA**

### **CLAIM 7**
### **VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (FLA. STAT. § 501.201, et seq.)**

191.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

192.    This claim is brought only on behalf of Class Members who are Florida residents (the "Florida Class").

193.    Plaintiffs are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), FLA. STAT. § 501.203(7).

194.    New GM engaged in "trade or commerce" within the meaning of FLA.

51

STAT. § 501.203(8).

195.   FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce ..." FLA. STAT. § 501.204(1). New GM participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

196.   In the course of its business, New GM systematically devalued safety and concealed the defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

197.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

198.   New GM was also aware that it valued cost-cutting over safety, selected

parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

199.   By failing to disclose and by actively concealing the many material defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair, unconscionable, and deceptive business practices in violation of the FUDTPA.

200.   In the course of New GM's business, it knowingly and willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above.   New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

201.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

202.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

203.   The many material defects in the class vehicles were not readily discoverable by consumers.

204.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Florida Class.

205.   New GM knew or should have known that its conduct violated the FUDTPA.

206.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

207.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)     Intentionally concealed the foregoing from Plaintiffs; and/or

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defect in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

208.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

209.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Florida Class.  A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

210.   Plaintiffs and the Florida Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased the class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

211. Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the FUDTPA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

212. Plaintiffs and Florida Class Members risk irreparable injury as a result of New GM's act and omissions in violation of the FUDTPA.

213. As a direct and proximate result of New GM's violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

214. Plaintiffs and the Florida Class are entitled to recover their actual damages under FLA. STAT. § 501.211(2) and attorneys' fees under FLA. STAT. § 501.2105(1).

215. Plaintiffs also seek an order enjoining New GM's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and

proper relief available under the FUDTPA.

## CLAIM 8
## FRAUD BY CONCEALMENT

216.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

217.   This claim is brought on behalf of Class Members who are Florida residents (the "Florida Class").

218.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

219.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

220.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

221.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of

the class vehicles and because the representations played a significant role in the value of the vehicles.

222. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Florida Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Florida Class.

223. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Florida Class.

224. On information and belief, New GM has still not made full and

adequate disclosure and continues to defraud Plaintiffs and the Florida Class and conceal material information regarding defects that exist in the class vehicles.

225. Plaintiffs and the Florida Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Florida Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Florida Class.

226. Because of the concealment and/or suppression of the facts, Plaintiffs and the Florida Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of

purchase or lease would have maintained their vehicles.

227. The value of all Florida Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

228. Accordingly, New GM is liable to the Florida Class for damages in an amount to be proven at trial.

229. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Florida Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**GEORGIA**

**CLAIM 9**

**VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (GA CODE ANNOTATED SECTION 10-1-390 ET. SEQ.)**

230. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

231. This claim is brought on behalf of class members who are Georgia residents (but "Georgia Class").

60

232.   The Georgia Fair Business Practices Act (Georgia FBPA) declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful.  GA. Code ANN. Sections 10-1–393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality or grade … if they are of another," and "[a]dvertising goods or services within intent not to sell them as advertised," (GA Code ANN. Section 10-1-393(b).

233.   By systematically devaluing safety and concealing defects in GM Corvette vehicles, New GM engaged in unfair or deceptive practices prohibited by the FBPA including:  (1) representing that such vehicles have characteristics, uses, benefits and qualities which they do not have; (2) representing that the vehicles are of a particular standard, quality and grade when they are not; and (3) advertising the vehicles with the intent not to sell them as advertised.  New GM participated in unfair or deceptive acts or practices that violated the Georgia FBPA.

234.   In the course of its business, New GM systematically devalued safety and concealed defects in its Corvette vehicles as described herein and otherwise engaged in activities with attendance here capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or

61

practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of these vehicles.

235.   From the date of its inception on July 10, 2009, New GM knew of the serious defects affecting all model years of its Corvette Z6 vehicles, because of (i) the knowledge of old GM personnel who remained at New GM; (ii) old GM documents and databases that transfer to New GM, (iii) continuous reports, investigations and notifications from regulatory authorities; and (iv) ongoing performance of New GM's TREAD Act obligations as discussed above.  New GM became award of the serious defects in the engine of the Corvette Z6 vehicles years ago but concealed and continues to conceal all of that information.

236.   New GM was also aware that it valued cost cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the defects in these vehicles to be subject to catastrophic engine failure, based on the failure to disclose and remedy defects to the vehicles. New GM has concealed this information from Corvette Z6 owners and potential owners.

237.   By failing to disclose and by actively concealing the engine defects in the Corvette Z6 vehicles, by marketing its vehicles as safe, reliable, and of high

quality, and presenting itself as a reputable manufacturer that values safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Georgia FBPA.

238.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the serious engine defects in Corvette Z6 automobiles.   New GM compounded the deception by asserting that these vehicles were safe, reliable and of high quality and by claiming to be a reputable manufacturer that values safety and stood behind its vehicles once they were on the road.

239.   New GM's unfair deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including plaintiffs, about the true safety and reliability of the vehicles.

240.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

241.   The many material defects in the class vehicles were not readily discoverable by consumers.

242.   New GM intentionally and knowingly misrepresented material facts concerning these vehicles with the intent to mislead plaintiffs and the Georgia Class.

243.   New GM knew or should have known that its conduct violated the George FBPA.

244.   As alleged above, New GM made material statements about the safety and reliability of these vehicles that were false or misleading.

245.   New GM owed plaintiffs a duty to disclose the true safety and reliability of the vehicles because New GM intentionally concealed the foregoing from plaintiffs and/or made incomplete representations about the safety and reliability of these vehicles generally including the significant engine defect which these vehicles possess.

246.   New GM's concealment of the engine defects in Corvette Z6 vehicles were material to plaintiffs and the Georgia Class.  These plaintiffs were exposed to significant dangerous conditions in driving these vehicles with the described defects.

247.   Plaintiff and the Georgia Class suffered ascertainable loss because New GM's misrepresentations and its concealment and failure to disclose material information.  Plaintiffs who purchased Corvette Z6 automobiles have incurred or will incur significant repair expenses because of the defects in those vehicles.

248.   Regardless of time of purchase or lease, no plaintiffs would have maintained and continued to drive their Corvette Z6 vehicles had they been aware of New GM's misconduct and the significant and perilous defects in these vehicles. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles

because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. Section 30118(c).

249.   New GM had an ongoing duty to all of these vehicle owners to refrain from unfair and deceptive acts or practices under the Georgia FBPA. These vehicles all suffer from a dangerous defect which causes catastrophic engine failure, which defect should have been made known to the plaintiffs.

250.   New GM's violations present a continuing risk to plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

251.   As a direct and proximate result of New GM's violations of the Georgia FBPA, plaintiffs in the Georgia Class have suffered injury and fact and/or actual damage.

252.   Plaintiffs and the Georgia Class are entitled to recover damages and exemplary damages (for intentional violations) per GA Code and Section 10-1-399(a).

253.   Plaintiffs also seek an order in joining New GM's unfair, unlawful and/or deceptive practices, attorney's fees, and any other just and proper relief available under the Georgia FBPA per Georgia Code Annotated Section 10-1-399.

## CLAIM 10
## VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICES ACT (GEORGIA CODE ANNOTATED SECTION 10-1-370 ET SEQ.)

254.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

255.   This claim is brought only on behalf of Class Members who are Georgia residents (the "Georgia Class").

256.   New GM, Plaintiffs, and the Georgia Class are "persons' within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), GA. CODE. ANN § 10-1-371(5).

257.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." GA. CODE. ANN § 10-1-372(a). By systematically devaluing safety and concealing defects in class vehicles, New GM engaged in deceptive trade practices prohibited by the Georgia UDTPA.

258.   In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles, as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact

66

with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

259.   From the date of its inception on July 10, 2009, New GM knew of the serious defects affecting class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) Old GM documents and databases that transferred to New GM; (iii) continuous reports, investigations, and notifications from regulatory authorities; and (iv) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of these defects and systemic safety issues in class vehicles years ago, but concealed all of that information.

260.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in class vehicles.  New GM concealed this information as well.

261.   By failing to disclose and by actively concealing the defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its

vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Georgia UDTPA.

262. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the safety issues and defects discussed above. New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

263. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the devaluing of safety at New GM, and the true value of the class vehicles.

264. New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

265. The many material defects in the class vehicles were not readily discoverable by consumers.

266. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Georgia Class.

68

267.   New GM knew or should have known that its conduct violated the Georgia UDTPA.

268.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the New GM brand that were either false or misleading.

269.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the value guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

270.   Because New GM fraudulently concealed the defects in the class vehicles, resulting in negative publicity once the defects finally began to be

disclosed, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

271.  New GM's systemic devaluation of safety and its concealment of defects in class vehicles were material to Plaintiffs and the Georgia Class. A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

272.  Plaintiffs and the Georgia Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.

273.  Plaintiffs and the Georgia Class will likely continue to suffer actual damages in that GM's Service Bulletin addressing premature valve guide wear instructs dealerships to replace worn LS7 heads with identical LS7 heads, which are subject to the same wear issue, thus "kicking the can down the road" by failing to permanently resolve the defects, which will force Plaintiffs and the Georgia class to pay out of pocket for future repairs upon re-manifestation of the defects.

274.    Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their class vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all Class vehicle owners to refrain from unfair and deceptive acts or practices under the Georgia UDTPA.   And, in any event, all owners of class vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

275.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

276.   As a direct and proximate result of New GM's violations of the Georgia UDTPA, Plaintiffs and the Georgia Class have suffered injury-in-fact and/or actual damage.

277.   Plaintiffs seek an order enjoining New GM's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per GA. CODE. ANN § 10-1-373.

## CLAIM 11

## FRAUD BY CONCEALMENT

278.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

279.   This claim is brought on behalf of Class Members who are Georgia residents (the "Georgia Class").

280.   New GM concealed and suppressed material facts concerning the quality of the class vehicles and the New GM brand.

281.   New GM concealed and suppressed material facts concerning the culture of New GM - a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

282.   New GM concealed and suppressed material facts concerning the defects in class vehicles that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

283.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of class vehicles, that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

72

284.   New GM had a duty to disclose the defects in class vehicles because they were known and/or accessible only to New GM; New GM had superior knowledge and access to the facts; and New GM knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Georgia Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in class vehicles, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual defects in its class vehicles.  Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Georgia Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind the products whose safety it is responsible for ensuring, are material concerns to a consumer.

285.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Georgia Class.

286.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Georgia Class and conceal material information regarding defects that exist in class vehicles.

287.   Plaintiffs and the Georgia Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased class vehicles manufactured by New GM; and/or they would not have purchased used class vehicles after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the New GM and Old GM vehicles; and/or would not have continued to drive their class vehicles or would have taken other affirmative steps. Plaintiffs' and the Georgia Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Georgia Class.

288.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Georgia Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the serious safety and quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class vehicles, and New GM's callous disregard for safety, Plaintiffs who purchased class vehicles after New GM came into existence either would have paid

less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their class vehicles.

289. The value of all Georgia Class Members' class vehicles has diminished as a result of New GM's fraudulent concealment of the defects and its systemic safety issues which have greatly tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

290. Accordingly, New GM is liable to the Georgia Class for damages in an amount to be proven at trial.

291. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Georgia Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**ILLINOIS**

## CLAIM 12
## VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, et seq. and 720 ILCS 295/1A)

292. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

293.   This claim is brought only on behalf of Class Members who are Illinois residents (the "Illinois Class").

294.   New GM is a "person" as that term is defined in 815 ILCS 505/1(c).

295.   Plaintiff and the Illinois Class are "consumers" as that term is defined in 815 ILCS 505/1(e).

296.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

297.   New GM participated in misleading, false, or deceptive acts that violated the Illinois CFA.  New GM engaged in deceptive business practices prohibited by the Illinois CFA.

298.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material

fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

299. From the date of its inception on July 10, 2009, New GM knew of many defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

300. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

301. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Illinois CFA.

302.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above.  New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

303.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

304.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

305.   The many material defects in the class vehicles were not readily discoverable by consumers.

306.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Illinois Class.

307.   New GM knew or should have known that its conduct violated the Illinois CFA.

308.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

309.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

310.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

311.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Illinois Class.   A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

312.   Plaintiffs and the Illinois Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.   Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.   Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

313.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Illinois CFA.   And, in any event, all class vehicle owners suffered ascertainable loss

in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

314.   As a direct and proximate result of New GM's violations of the Illinois CFA, Plaintiffs and the Illinois Class have suffered injury-in-fact and/or actual damage.

315.   Pursuant to 815 ILCS 505/10a (a), Plaintiffs and the Illinois Class seek monetary relief against New GM in the amount of actual damages, as well as punitive damages because New GM acted with fraud and/or malice and/or was grossly negligent.

316.   Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 et seq.

## CLAIM 13
## FRAUD BY CONCEALMENT

317.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

318.   This claim is brought on behalf of Class Members who are Illinois residents (the "Illinois Class").

319.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

320.   New GM concealed and suppressed material facts concerning the

81

culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

321.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

322.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

323.   New GM had a duty to disclose the many defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Illinois Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set

forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Illinois Class.

324.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Illinois Class.

325.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Illinois Class and conceal material information regarding defects that exist in the class vehicles.

326.   Plaintiffs and the Illinois Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the

Illinois Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Illinois Class.

327.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Illinois Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

328.   The value of all Illinois Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

329.   Accordingly, New GM is liable to the Illinois Class for damages in an amount to be proven at trial.

330.   New GM's acts were done maliciously, oppressively, deliberately, with

intent to defraud, and in reckless disregard of Plaintiffs' and the Illinois Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**INDIANA**

## CLAIM 14

### VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT (IND. CODE § 24-5-0.5-3)

331.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

332.    This claim is brought only on behalf of Class Members who are Indiana residents (the "Indiana Class").

333.    New GM is a "person" within the meaning of IND. CODE § 24-5-0.5-2(2) and a "supplier" within the meaning of IND. CODE § 24-5-.05-2(a)(3).

334.    Plaintiffs' and Indiana Class Members' purchases of the class vehicles are "consumer transactions" within the meaning of IND. CODE § 24-5-.05-2(a)(1).

335.    Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive trade practice," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does

not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; ... (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; ... (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

336.  New GM participated in misleading, false, or deceptive acts that violated the Indiana DCSA.  By systematically devaluing safety and concealing defects in class vehicles, New GM engaged in deceptive business practices prohibited by the Indiana DCSA.  New GM also engaged in unlawful trade practices by: (1) representing that the class vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the class vehicles are of a particular standard and quality when they are not; (3) advertising the class vehicles with the intent not to sell them as advertised; and (4) otherwise engaging in conduct likely to deceive.

337.   New GM's actions as set forth above occurred in the conduct of trade or commerce.

338.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

339.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

340.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and

manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

341. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Indiana DCSA.

342. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

343. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

344. New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

345. The many material defects in the class vehicles were not readily discoverable by consumers.

346.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Indiana Class.

347.   New GM knew or should have known that its conduct violated the Indiana DCSA.

348.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

349.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these

representations.

350.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

351.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Indiana Class.   A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

352.   Plaintiffs and the Indiana Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

353.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of

those vehicles because the TREAD Act on its face only applies to vehicle manufacturers.  49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Indiana DCSA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

354.   As a direct and proximate result of New GM's violations of the Indiana DCSA, Plaintiffs and the Indiana Class have suffered injury-in-fact and/or actual damage.

355.   Pursuant to IND. CODE § 24-5-0.5-4, Plaintiffs and the Indiana Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and each Indiana Class member, including treble damages up to $1,000 for New GM's willfully deceptive acts.

356.   Plaintiff also seeks punitive damages based on the outrageousness and recklessness of the New GM's conduct and New GM's high net worth.

## CLAIM 15
## <u>FRAUD BY CONCEALMENT</u>

357.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

358.   This claim is brought on behalf of Class Members who are Indiana

residents (the "Indiana Class").

359. New GM concealed and suppressed material facts concerning the quality of the class vehicles.

360. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

361. New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

362. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

363. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had

superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Indiana Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Indiana Class.

364.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Indiana Class.

365.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Indiana Class and conceal material information regarding defects that exist in the class vehicles.

366.   Plaintiffs and the Indiana Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New

GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Indiana Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Indiana Class.

367.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Indiana Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

368.   The value of all Indiana Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for

the vehicles.

369.   Accordingly, New GM is liable to the Indiana Class for damages in an amount to be proven at trial.

370.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Indiana Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 16
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (IND. CODE § 26-1-2-314)

371.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

372.   This claim is brought only on behalf of Indiana residents who are Class Members (the "Indiana Class") who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

373.   New GM was a merchant with respect to motor vehicles within the meaning of IND. CODE § 26-1-2-104(1).

374.   Under IND. CODE § 26-1-2-314, a warranty that the New GM-manufactured class vehicles were in merchantable condition was implied by law in

the transactions when Plaintiffs purchased or leased their class vehicles from New GM on or after July 10, 2009.

375.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured class vehicles are inherently defective in that there are defects which cause inordinate and unusual early wear and failure of engines.

376.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Indiana Class.

377.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Indiana Class members have been damaged in an amount to be proven at trial.

**KENTUCKY**

**CLAIM 17**
**VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT**
**(KY. REV. STAT. § 367.110, et seq.)**

378.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

379.   This claim is brought only on behalf of Class Members who are Kentucky residents (the "Kentucky Class").

380. New GM, Plaintiffs, and the Kentucky Class are "persons" within the meaning of the KY. REV. STAT. § 367.110(1).

381. New GM engaged in "trade" or "commerce" within the meaning of KY. REV. STAT. § 367.110(2).

382. The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce ...." KY. REV. STAT. § 367.170(1). New GM participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By systematically devaluing safety and concealing a plethora of defects in GM-branded vehicles and Old GM vehicles, New GM engaged in deceptive business practices prohibited by the Kentucky CPA.

383. In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

384. From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i)

the knowledge of Old GM personnel who remained at New GM; (ii) Old GM documents and databases that transferred to New GM; (iii) continuous reports, investigations, and notifications from regulatory authorities; and (iv) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

385. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

386. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Kentucky CPA.

387. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that class vehicles were safe,

reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

388.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

389.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

390.   The many material defects in the class vehicles were not readily discoverable by consumers.

391.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Kentucky Class.

392.   New GM knew or should have known that its conduct violated the Kentucky CPA.

393.   New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

394.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)     Intentionally concealed the foregoing from Plaintiffs; and/or

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

395.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

396.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Kentucky Class. A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

397.   Plaintiffs and the Kentucky Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's conduct.

398.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to refrain from unfair and deceptive acts or practices under the Kentucky CPA.  And, in any event, all Class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

399.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

400.   As a direct and proximate result of New GM's violations of the Kentucky CPA, Plaintiffs and the Kentucky Class have suffered injury-in-fact and/or actual damage.

401.   Pursuant to KY. REV. STAT. ANN. § 367.220, Plaintiffs and the Kentucky Class seek to recover actual damages in an amount to be determined at trial; an order enjoining New GM's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under KY. REV. STAT. ANN. § 367.220.

## CLAIM 18
## FRAUD BY CONCEALMENT

402.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

403.   This claim is brought on behalf of Class Members who are Kentucky residents (the "Kentucky Class").

404.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

405.   New GM concealed and suppressed material facts concerning the culture of New GM - a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

406.   New GM concealed and suppressed material facts concerning the defects in the vehicles, and that it valued cost-cutting over safety and took steps to

ensure that its employees did not reveal known safety defects to regulators or consumers.

407.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of New GM class vehicles and Certified Pre-Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.   The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

408.   New GM had a duty to disclose the many defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009, New GM had superior knowledge and access to the facts; and New GM knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Kentucky Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they

directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Kentucky Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind the products whose safety it is responsible for ensuring, are material concerns to a consumer.

409.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Kentucky Class.

410.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Kentucky Class and conceal material information regarding defects that exist in the class vehicles.

411.   Plaintiffs and the Kentucky Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their class vehicles or would have taken other affirmative steps. Plaintiffs' and the Kentucky Class's actions were justified.

New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Kentucky Class.

412. Because of the concealment and/or suppression of the facts, Plaintiffs and the Kentucky Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the safety and quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, and New GM's callous disregard for safety, Plaintiffs who purchased new or used class vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their class vehicles.

413. The value of all Kentucky Class Members' class vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

414. Accordingly, New GM is liable to the Kentucky Class for damages in an amount to be proven at trial.

415.    New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Kentucky Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**MARYLAND**

### CLAIM 19
### VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
### (MD. CODE COM. LAW § 13-101, et seq.)

416.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

417.    This claim is brought only on behalf of class members who are Maryland residents.

418.    New GM, Plaintiffs, and the Maryland Class are "persons" within the meaning of MD. CODE COM. LAW § 13-101(h).

419.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good. MD. COM. LAW CODE § 13-303. New GM participated in misleading, false, or deceptive acts that violated the Maryland CPA. By systematically devaluing safety and concealing defects in Corvette Z06 vehicles, New GM engaged in deceptive business practices prohibited by the Maryland CPA.

420. New GM's actions as set forth above occurred in the conduct of trade or commerce.

421. In the course of its business, New GM systematically devalued safety and concealed defects in Corvette Z06 vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such concealment, suppression or omission, in connection with the sale of vehicles.

422. From the date of its inception on July 10, 2009, New GM knew of serious defects affecting Corvette Z06 vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) Old GM documents and databases that transferred to New GM; (iii) continuous reports, investigations, and notifications from regulatory authorities; and (iv) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of these defects and safety issues in Corvette Z06 vehicles years ago, but has concealed all of that information.

423. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach

107

would necessarily cause the existence of defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in Corvette Z06 vehicles. New GM concealed this information as well.

424.   By failing to disclose and by actively concealing the defects in Corvette Z06 vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Maryland CPA.

425.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the safety issues and defects discussed above. New GM compounded the deception by repeatedly asserting that Corvette Z06 vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

426.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Corvette Z06 vehicles, and the true value of these vehicles.

427.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

428.   The many material defects in the class vehicles were not readily

discoverable by consumers.

429.   New GM intentionally and knowingly misrepresented material facts regarding these vehicles with the intent to mislead Plaintiffs and the Maryland Class.

430.   New GM knew or should have known that its conduct violated the Maryland CPA.

431.   As alleged above, New GM made material statements about the safety and reliability of the vehicles that were either false or misleading.

(a)   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the vehicles and the devaluing of safety at New GM, because New GM intentionally concealed the foregoing from Plaintiffs; and/or made incomplete representations about the safety and reliability of the vehicles while purposefully withholding material facts from Plaintiffs that contradicted these representations.

432.   New GM's systemic devaluation of safety and its concealment of defects in Corvette Z06 vehicles were material to Plaintiffs and the Maryland Class. A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

433.   Plaintiffs and the Maryland Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased Corvette Z06 vehicles after the date of New

GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.

434.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their Corvette Z06 had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to Corvette Z06 vehicle owners to refrain from unfair and deceptive acts or practices under the Maryland CPA. And, in any event, all owners of Corvette Z06 vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

435.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

436.   As a direct and proximate result of New GM's violations of the Maryland CPA, Plaintiffs and the Maryland Class have suffered injury-in-fact and/or actual damage.

437.   Pursuant to MD. CODE COM. LAW § 13-408, Plaintiffs and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## CLAIM 20
## FRAUD BY CONCEALMENT

438.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

439.   This claim is brought on behalf of class members who are Maryland residents (the "Maryland Class").

440.   New GM concealed and suppressed material facts concerning the quality of its Corvette Z06 vehicles.

441.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

442.   New GM concealed and suppressed material facts concerning the defects plaguing Corvette Z06 vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

443.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Corvette Z06 vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles

111

are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of these vehicles and because the representations played a significant role in the value of the vehicles.

444.   New GM had a duty to disclose the defects in Corvette Z06 vehicles because they were known by and/or accessible only to New GM; New GM had superior knowledge and access to the facts; and New GM knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Maryland Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in Corvette Z06 vehicles as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy and practices, and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of these vehicles purchased or leased by Plaintiffs and the Maryland Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind the products whose safety it is responsible for ensuring, are material concerns to a consumer.

445.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's

image and cost New GM money, and it did so at the expense of Plaintiffs and the Maryland Class.

446.  New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Maryland Class and conceal material information regarding defects that exist in Corvette Z06 vehicles.

447.  Plaintiffs and the Maryland Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased Corvette Z06 cars manufactured by New GM; and/or they would not have purchased used Corvette Z06 vehicles; and/or they would not have purchased vehicles after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the New GM and Old GM vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Maryland Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Maryland Class.

448.  Because of the concealment and/or suppression of the facts, Plaintiffs and the Maryland Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in these vehicles and the serious safety and quality issues

engendered by New GM's corporate policies. Had they been aware of the concealed defects that existed in Corvette Z06 vehicles and New GM's callous disregard for safety, Plaintiffs who purchased these vehicles, after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

449.   The value of all Maryland Class Members' Corvette Z06 vehicles has diminished as a result of New GM's fraudulent concealment of the defects and its systemic safety issues which have greatly tarnished the New GM brand as to Corvette Z06 vehicles and made any reasonable consumer reluctant to purchase any of these vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

450.   Accordingly, New GM is liable to the Maryland Class for damages in an amount to be proven at trial.

451.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Maryland Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 21

## <u>BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</u>
## <u>(MD. CODE COM. LAW § 2-314)</u>

452.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

453.    This claim is brought only on behalf of Maryland residents who purchased or leased a new Corvette Z06 vehicle manufactured by New GM after July 10, 2009.

454.    New GM was a merchant with respect to motor vehicles within the meaning of MD. COM. LAW § 2-104(1).

455.    Under MD. COM. LAW § 2-314, a warranty that the vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Corvette Z06 vehicles from New GM on or after July 10, 2009.

456.    These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured Corvette Z06 vehicles are inherently defective in that there are defects in the valve train and engine that lead to catastrophic engine failure, with the attendant shut down of power steering and power brakes and the expulsion of engine oil under the rear wheels and the danger of attendant explosion.

457. New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Maryland class to New GM and to NHTSA.

458. As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Maryland class members have been damaged in an amount to be proven at trial.

## MASSACHUSETTS

### CLAIM 22
### DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (MASS. GEN. LAWS CH. 93A, § 1, et seq.)

459. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

460. This claim is brought only on behalf of Class Members who are Massachusetts residents (the "Massachusetts Class").

461. New GM, Plaintiffs, and the Massachusetts Class are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(a).

462. New GM engaged in "trade" or "commerce" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(b).

463. Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." MASS. GEN.

LAWS ch. 93A, § 2. New GM both participated in misleading, false, or deceptive acts that violated the Massachusetts Act. By systematically devaluing safety and concealing defects in the class vehicles, New GM engaged in deceptive business practices prohibited by the Massachusetts Act.

464. In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

465. From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

466. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged

employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

467. By failing to disclose and by actively concealing the many defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Massachusetts Act.

468. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

469. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

470. New GM's knowing and willful failure to disclose the material defects

118

in its LS7 engines diminished the value of the class vehicles.

471.   The many material defects in the class vehicles were not readily discoverable by consumers.

472.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Massachusetts Class.

473.   New GM knew or should have known that its conduct violated the Massachusetts Act.

474.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

475.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

119

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

476.   Because New GM fraudulently concealed the many defects in the class vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

477.   New GM's systemic devaluation of safety and its concealment of defects in class vehicles were material to Plaintiffs and the Massachusetts Class. A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

478.   Plaintiffs and the Massachusetts Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. For Plaintiffs who purchased class vehicles that were sold by New GM as "Certified Pre-Owned Vehicles," they too either would

have paid less for their vehicles or would not have purchased them but for New GM's violations of the Massachusetts Act.

479.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Massachusetts Act. And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

480.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

481.   As a direct and proximate result of New GM's violations of the Massachusetts Act, Plaintiffs and the Massachusetts Class have suffered injury-in-fact and/or actual damage.

482.   Pursuant to MASS. GEN. LAWS ch. 93A, § 9, Plaintiffs and the Massachusetts Class seek monetary relief against New GM measured as the greater

of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff and each Massachusetts Class member. Because New GM's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff and each Massachusetts Class member, up to three times actual damages, but no less than two times actual damages.

483.   Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

## CLAIM 23
## FRAUD BY CONCEALMENT

484.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

485.   This claim is brought on behalf of Class Members who are Massachusetts residents (the "Massachusetts Class").

486.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

487.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

488. New GM concealed and suppressed material facts concerning the many serious defects plaguing class vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

489. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

490. New GM had a duty to disclose the many defects in class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Massachusetts Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record,

safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Massachusetts Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

491.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Massachusetts Class.

492.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Massachusetts Class and conceal material information regarding defects that exist in class vehicles.

493.   Plaintiffs and the Massachusetts Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles;

and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Massachusetts Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Massachusetts Class.

494. Because of the concealment and/or suppression of the facts, Plaintiffs and the Massachusetts Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in the class vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Had they been aware of the many defects that existed in class vehicles, and the company's callous disregard for safety, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

495. The value of all Massachusetts Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the GM brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

496.    Accordingly, New GM is liable to the Massachusetts Class for damages in an amount to be proven at trial.

497.    New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Massachusetts Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 24
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (ALM GL. CH. 106, § 2-314)

498.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

499.    This claim is brought only on behalf of Class Members who are Massachusetts residents (the "Massachusetts Class") who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

500.    New GM was a merchant with respect to motor vehicles within the meaning of ALM GL CH. 106, § 2-104(1).

501.    Under ALM GL CH. 106, § 2-314, a warranty that the New GM-manufactured class vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their New GM-manufactured class vehicles from New GM on or after July 10, 2009.

502. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured class vehicles are inherently defective in that there are defects which cause inordinate and unusual early wear and failure of engines.

503. New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Massachusetts Class.

504. As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Massachusetts Class members have been damaged in an amount to be proven at trial.

## MICHIGAN

### CLAIM 25
### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903, et seq.)

505. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

506. This claim is brought only on behalf of Class Members who are Michigan residents (the "Michigan Class").

507. Plaintiffs and the Michigan Class Members were "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

508.   At all relevant times hereto, New GM was a "person" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

509.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce ...." MICH. COMP. LAWS § 445.903(1). New GM engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).   By systematically devaluing safety and concealing defects in the class vehicles, New GM participated in unfair, deceptive, and unconscionable acts that violated the Michigan CPA.

510.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

511.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

512.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all the class vehicles. New GM concealed this information as well.

513.   By failing to disclose and by actively concealing the many defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair, unconscionable, and deceptive business practices in violation of the Michigan CPA.

514.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

515.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

516.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

517.   The many material defects in the class vehicles were not readily discoverable by consumers.

518.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Michigan Class.

519.   New GM knew or should have known that its conduct violated the Michigan CPA.

520.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

521.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while

purposefully withholding material facts from Plaintiffs that contradicted these representations.

522. Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

523. New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Michigan Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

524. Plaintiffs and the Michigan Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

525. Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect

to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Michigan CPA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business. As a direct and proximate result of New GM's violations of the Michigan CPA, Plaintiffs and the Michigan Class have suffered injury-in-fact and/or actual damage.

526. Plaintiffs seek injunctive relief to enjoin New GM from continuing its unfair and deceptive acts; monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Michigan Class member; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

527. Plaintiffs also seek punitive damages against New GM because it carried out despicable conduct with willful and conscious disregard of the rights and safety of others. New GM intentionally and willfully misrepresented the safety and reliability of the class vehicles, deceived Plaintiffs and Michigan Class Members on life-or-death matters, and concealed material facts that only they knew, all to avoid

133

the expense and public relations nightmare of correcting a deadly flaw in vehicles it repeatedly promised Plaintiffs and Michigan Class Members were safe. New GM's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## CLAIM 26
## FRAUD BY CONCEALMENT

528.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

529.   This claim is brought on behalf of Class Members who are Michigan residents (the "Michigan Class").

530.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

531.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

532.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

533.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned

vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

534. New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Michigan Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Michigan Class.

535. New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's

image and cost New GM money, and it did so at the expense of Plaintiffs and the Michigan Class.

536.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Michigan Class and conceal material information regarding defects that exist in the class vehicles.

537.   Plaintiffs and the Michigan Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Michigan Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Michigan Class.

538.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Michigan Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class

vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

539.   The value of all Michigan Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

540.   Accordingly, New GM is liable to the Michigan Class for damages in an amount to be proven at trial.

541.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Michigan Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 27
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (MICH. COMP. LAWS § 440.2314)

542.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

543. This claim is brought only on behalf of the Michigan Class members who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

544. New GM was a merchant with respect to motor vehicles within the meaning of MICH. COMP. LAWS § 440.2314(1).

545. Under MICH. COMP. LAWS § 440.2314, a warranty that the New GM-manufactured class vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their class vehicles from New GM on or after July 10, 2009.

546. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured class vehicles are inherently defective in that engines are subject to unusual premature wear and catastrophic failure.

547. New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Michigan Class before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

548.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Michigan Class members have been damaged in an amount to be proven at trial.

**MONTANA**

**CLAIM 28**
**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION ACT OF 1973**
**(MONT. CODE ANN. § 30-14-101, et seq.)**

549.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

550.   This claim is brought only on behalf of Class Members who are Montana residents (the "Montana Class").

551.   New GM, Plaintiffs and the Montana Class are "persons" within the meaning of MONT. CODE ANN. § 30-14-102(6).

552.   Montana Class Members are "consumer[s]" under MONT. CODE ANN. § 30-14- 102(1).

553.   The sale or lease of the class vehicles to Montana Class Members occurred within "trade and commerce" within the meaning of MONT. CODE ANN. § 30-14-102(8), and New GM committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

554.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or commerce." MONT. CODE ANN. § 30-14-103.  By systematically devaluing safety and concealing defects in the class vehicles, New GM engaged in unfair and deceptive acts or practices in violation of the Montana CPA.

555.  In the course of its business, New GM systematically devalued safety and concealed defects in class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the class vehicles.

556.  From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

557.  New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged

employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all the class vehicles. New GM concealed this information as well.

558. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Montana CPA.

559. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

560. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

561. New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

562.   The many material defects in the class vehicles were not readily discoverable by consumers.

563.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles and the GM brand with the intent to mislead Plaintiffs and the Montana Class.

564.   New GM knew or should have known that its conduct violated the Montana CPA.

565.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles that were either false or misleading.

566.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)   Intentionally concealed the foregoing from Plaintiffs; and/or

(c)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while

purposefully withholding material facts from Plaintiffs that contradicted these representations.

567. Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

568. New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Montana Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

569. Plaintiffs and the Montana Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

570. Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect

143

to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Montana CPA. And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

571. As a direct and proximate result of New GM's violations of the Montana CPA, Plaintiffs and the Montana Class have suffered injury-in-fact and/or actual damage.

572. Because the New GM's unlawful methods, acts, and practices have caused Montana Class Members to suffer an ascertainable loss of money and property, the Montana Class seeks from New GM actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, an order enjoining New GM's unfair, unlawful, and/or deceptive practices, and any other relief the Court considers necessary or proper, under MONT. CODE ANN. § 30-14-133.

## CLAIM 29
## FRAUD BY CONCEALMENT

573. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

144

574.  This claim is brought on behalf of Class Members who are Montana residents (the "Montana Class").

575.  New GM concealed and suppressed material facts concerning the quality of the class vehicles.

576.  New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

577.  New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

578.  New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.   The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

579.  New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New

145

GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Montana Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Montana Class.

580.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Montana Class.

581.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Montana Class and conceal material information regarding defects that exist in the class vehicles.

582.   Plaintiffs and the Montana Class were unaware of these omitted material facts and would not have acted as they did if they had known of the

concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Montana Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Montana Class.

583. Because of the concealment and/or suppression of the facts, Plaintiffs and the Montana Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

584. The value of all Montana Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the

class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

585.   Accordingly, New GM is liable to the Montana Class for damages in an amount to be proven at trial.

586.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Montana Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**CLAIM 30**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(MONT. CODE § 30-2-314)**

587.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

588.   This claim is brought only on behalf of the Montana Class members who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

589.   New GM was a merchant with respect to motor vehicles under MONT. CODE § 30- 2-104(1).

590.   Under MONT. CODE § 30-2-314, a warranty that the New GM-manufactured class vehicles were in merchantable condition was implied by law in

the transactions when Plaintiffs purchased or leased their class vehicles from New GM on or after July 10, 2009.

591. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured class vehicles are inherently defective in that engines are subject to unusual premature wear and catastrophic failure.

592. New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the Montana Class before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

593. As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the Montana Class members have been damaged in an amount to be proven at trial.

**NEW JERSEY**

**CLAIM 31**
**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1, et seq.)**

594. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

595.   This claim is brought only on behalf of Class Members who are New Jersey residents (the "New Jersey Class").

596.   Plaintiffs, the New Jersey Class, and New GM are or were "persons" within the meaning of N.J. STAT. ANN. § 56:8-1(d).

597.   New GM engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

598.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby..." N.J. STAT. ANN. § 56:8-2. New GM engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class Members rely upon their acts, concealment, suppression or omissions.

599.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise

engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

600. From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD. Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

601. By failing to disclose and by actively concealing the many defects in class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its

vehicles after they were sold, New GM engaged in deceptive business practices in violation of the New Jersey CFA.

602.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many safety issues and serious defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

603.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

604.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

605.   The many material defects in the class vehicles were not readily discoverable by consumers.

606.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the New Jersey Class.

607.   New GM knew or should have known that its conduct violated the New Jersey CFA.

608.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

609.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)    Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)    Intentionally concealed the foregoing from Plaintiffs; and/or

(c)    Made incomplete representations about the safety and reliability of the class vehicles generally, and the ignition switch and other defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

610.   Because New GM fraudulently concealed the many defects in the class vehicles, resulting in negative publicity once the defects finally began to be

153

disclosed, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

611.  New GM's systemic devaluation of safety and its concealment of defects in class vehicles were material to Plaintiffs and the New Jersey Class. A vehicle made by a reputable manufacturer is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

612.   Plaintiffs and the New Jersey Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  For Plaintiffs who purchased class vehicles that were sold as "Certified Pre-Owned," they too either would have paid less for their vehicles or would not have purchased them but for New GM's violations of the New Jersey CFA.

613.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those

vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the New Jersey CFA. And, in any event, all GM vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

614.  New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

615.  As a direct and proximate result of New GM's violations of the New Jersey CFA, Plaintiffs and the New Jersey Class have suffered injury-in-fact and/or actual damage.

616.  Plaintiffs and the New Jersey Class are entitled to recover legal and/or equitable relief including an order enjoining New GM's unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. STAT. ANN. § 56:8-19, and any other just and appropriate relief.

## CLAIM 32
## FRAUD BY CONCEALMENT

617.  Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

618.   This claim is brought on behalf of Class Members who are New Jersey residents (the "New Jersey Class").

619.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the class vehicles.

620.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

621.   New GM concealed and suppressed material facts concerning the many serious defects plaguing class vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

622.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

623.   New GM had a duty to disclose the many defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to

New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the New Jersey Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the New Jersey Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

624.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the New Jersey Class.

625.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the New Jersey Class and conceal material information regarding defects that exist in the class vehicles.

626.   Plaintiffs and the New Jersey Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the New Jersey Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the New Jersey Class.

627.   Because of the concealment and/or suppression of the facts, Plaintiffs and the New Jersey Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in the class vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Had they been aware of the many defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either

would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

628.   The value of all New Jersey Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects and its systemic safety issues which have greatly tarnished the class vehicles and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

629.   Accordingly, New GM is liable to the New Jersey Class for damages in an amount to be proven at trial.

630.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the New Jersey Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 33
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (N.J. STAT. ANN. § 12A:2-314)

631.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

632.   This claim is brought only on behalf of the New Jersey Class members who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

633.   New GM was a merchant with respect to motor vehicles within the meaning of N.J. STAT. ANN. § 12A:2-104(1).

634.   A warranty that the New GM-manufactured class vehicles were in merchantable condition was implied by law under N.J. STAT. ANN. § 12A:2-104(1) in the transactions when Plaintiffs purchased their class vehicles from New GM on or after July 10, 2009.

635.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured class vehicles are inherently defective in that there are defects which cause inordinate and unusual early wear and failure of engines.

636.   New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and the New Jersey Class.

637.   As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the New Jersey Class members have been damaged in an amount to be proven at trial.

## OHIO

### CLAIM 34
### VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT
### (OHIO REV. CODE ANN. § 1345.01, et seq.)

638.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

639.   This claim is brought only on behalf of Class Members who are Ohio residents (the "Ohio Class").

640.   New GM is a "supplier" as that term is defined in OHIO REV. CODE § 1345.01(C).

641.   Plaintiffs and the Ohio Class are "consumers" as that term is defined in OHIO REV. CODE § 1345.01(D), and their purchases and leases of the class vehicles are "consumer transactions" within the meaning of OHIO REV. CODE § 1345.01(A).

642.   The Ohio Consumer Sales Practices Act ("Ohio CSPA"), OHIO REV. CODE § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has

not. Id. New GM's conduct as alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of OHIO REV. CODE § 1345.02.

643. By systematically devaluing safety and concealing defects in the class vehicles, New GM engaged in deceptive business practices prohibited by the Ohio CSPA, including: representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard, quality, and grade when they are not; representing that the subject of a transaction involving class vehicles has been supplied in accordance with a previous representation when it has not; and engaging in other unfair or deceptive acts or practices.

644. New GM's actions as set forth above occurred in the conduct of trade or commerce.

645. In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

646.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

647.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

648.   By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Ohio CSPA.

649.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above.  New

GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

650.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

651.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

652.   The many material defects in the class vehicles were not readily discoverable by consumers.

653.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Ohio Class.

654.   New GM knew or should have known that its conduct violated the Ohio CSPA.

655.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

656. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)     Intentionally concealed the foregoing from Plaintiffs; and/or

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

657. Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

658. New GM's systemic devaluation of safety and its concealment of defects in the class vehicles were material to Plaintiffs and the Ohio Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise

comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

659.  Plaintiffs and the Ohio Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

660.  Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Ohio CSPA.  And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

661.   As a direct and proximate result of New GM's violations of the Ohio CSPA, Plaintiffs and the Ohio Class have suffered injury-in-fact and/or actual damage.

662.   Ohio Class Members seek punitive damages against New GM because New GM's conduct was egregious.   New GM misrepresented the safety and reliability of class vehicles, concealed myriad defects in the class vehicles and the systemic safety issues plaguing New GM, deceived Class Members on life-or-death matters, and concealed material facts that only New GM knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in its culture and in the class vehicles.   New GM's egregious conduct warrants punitive damages.

663.   Plaintiffs and the Ohio Class specifically do not allege herein a claim for violation of OHIO REV. CODE § 1345.72.

664.   New GM was on notice pursuant to OHIO REV. CODE § 1345.09(B) that its actions constituted unfair, deceptive, and unconscionable practices by, for example, *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio App. LEXIS 3911, at *33 (S.D. Ohio Aug. 18, 2005), and *Lilly v. Hewlett-Packard Co*., 2006 U.S. Dist. LEXIS 22114, at *17-18 (S.D. Ohio Apr. 21, 2006).   Further, New GM's conduct as alleged above constitutes an act or practice previously declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 and previously determined by Ohio courts to violate Ohio's Consumer Sales Practices

Act and was committed after the decisions containing these determinations were made available for public inspection under division (A)(3) of O.R.C. § 1345.05. The applicable rule and Ohio court opinions include, but are not limited to: OAC 109:4-3-16; *Mason v. Mercedes-Benz USA, LLC*, 2005 Ohio 4296 (Ohio Ct. App. 2005); *Khouri v. Lewis*, Cuyahoga Common Pleas No. 342098 (2001); *State ex rel. Montgomery v. Canterbury*, Franklin App. No. 98CVH054085 (2000); and *Fribourg v. Vandemark* (July 26, 1999), Clermont App. No CA99-02-017, unreported (PIF # 10001874).

665.   As a result of the foregoing wrongful conduct of New GM, Plaintiffs and the Ohio Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining New GM's deceptive and unfair conduct, treble damages, court costs and reasonable attorneys' fees, pursuant to OHIO REV. CODE § 1345.09, et seq.

## CLAIM 35
## FRAUD BY CONCEALMENT

666.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

667.   This claim is brought on behalf of Class Members who are Ohio residents (the "Ohio Class").

668.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

669.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

670.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

671.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.   The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

672.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not

known to or reasonably discoverable by Plaintiffs and the Ohio Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Ohio Class.

673.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Ohio Class.

674.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Ohio Class and conceal material information regarding defects that exist in the class vehicles.

675.   Plaintiffs and the Ohio Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New

GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.  Plaintiffs' and the Ohio Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Ohio Class.

676.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Ohio Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

677.   The value of all Ohio Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the many defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

678.   Accordingly, New GM is liable to the Ohio Class for damages in an amount to be proven at trial.

679.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Ohio Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 36
## IMPLIED WARRANTY IN TORT

680.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

681.   Plaintiffs bring this claim only on behalf of the Ohio Class members who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

682.   The class vehicles manufactured by New GM on or after July 10, 2009, contained a design defect, namely, a defective engine subject to premature wear and catastrophic failure.

683.   The design, manufacturing, and/or assembly defects existed at the time the class vehicles containing the defective engine left the possession or control of New GM.

684.   Based upon the dangerous product defects, New GM failed to meet the expectations of a reasonable consumer. The New GM-manufactured class vehicles failed their ordinary, intended use because the engine is subject to premature unusual wear and catastrophic failure.

685.   The design defects in the New GM-manufactured vehicles were the direct and proximate cause of economic damages to Plaintiffs, as well as damages incurred or to be incurred by each of the Ohio Class members.

## PENNSYLVANIA

### CLAIM 37
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 P.S. § 201-1, et seq.)

686.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

687.   This claim is brought only on behalf of Class Members who are Pennsylvania residents (the "Pennsylvania Class").

688.   Plaintiffs purchased or leased their class vehicles primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

689.   All of the acts complained of herein were perpetrated by New GM in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

690.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:

691.   (i) "Representing that goods or services have ... characteristics, .... Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade ... if they are of another;:" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

692.   New GM engaged in unlawful trade practices, including representing that class vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that class vehicles are of a particular standard and quality when they are not; advertising class vehicles with the intent not to sell them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

693.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

694.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

695.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

696.   By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Pennsylvania CPL.

697.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New

175

GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

698.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

699.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

700.   The many material defects in the class vehicles were not readily discoverable by consumers.

701.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Pennsylvania Class.

702.   New GM knew or should have known that its conduct violated the Pennsylvania CPL.

703.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

704.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

705.   Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(a)   Intentionally concealed the foregoing from Plaintiffs; and/or

(b)   Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

706.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

707.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Pennsylvania Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an

otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

708.    Plaintiffs and the Pennsylvania Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

709.    Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Pennsylvania CPL.   And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

710.   As a direct and proximate result of New GM's violations of the Pennsylvania CPL, Plaintiffs and the Pennsylvania Class have suffered injury-in-fact and/or actual damage.

711.   New GM is liable to Plaintiffs and the Pennsylvania Class for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a). Plaintiffs and the Pennsylvania Class are also entitled to an award of punitive damages given that New GM's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## CLAIM 38
## FRAUD BY CONCEALMENT

712.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

713.   This claim is brought on behalf of Class Members who are Pennsylvania residents (the "Pennsylvania Class").

714.   New GM concealed and suppressed material facts concerning the quality of the class vehicles.

715.   New GM concealed and suppressed material facts concerning the culture of New GM - a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

716.   New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took

steps to ensure that its employees did not reveal known defects to regulators or consumers.

717.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.   The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

718.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Pennsylvania Class.  New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and

concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Pennsylvania Class.

719.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Pennsylvania Class.

720.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Pennsylvania Class and conceal material information regarding defects that exist in the class vehicles.

721.   Plaintiffs and the Pennsylvania Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps.   Plaintiffs' and the Pennsylvania Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Pennsylvania Class.

722. Because of the concealment and/or suppression of the facts, Plaintiffs and the Pennsylvania Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

723. The value of all Pennsylvania Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

724. Accordingly, New GM is liable to the Pennsylvania Class for damages in an amount to be proven at trial.

725. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Pennsylvania Class's rights and well-being to enrich New GM. New GM's conduct warrants an

assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 39
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (13 PA. CONS. STAT. ANN. § 2314)

726.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

727.   This claim is brought only on behalf of the Pennsylvania Class members who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

728.   New GM is a merchant with respect to motor vehicles.

729.   A warranty that the New GM-manufactured class vehicles were in merchantable condition was implied by law when New GM sold or leased the class vehicles to Plaintiffs and the Pennsylvania Class on or after July 10, 2009.

730.   These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used.   Specifically, the New GM-manufactured class vehicles are inherently defective in that there are defects in the engine which result in premature unusual wear and catastrophic failure.

731.   New GM was provided notice of these issues by numerous complaints filed against it, by its own internal investigations, and by numerous individual letters

and communications sent by Plaintiffs and the Pennsylvania Class before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

732.    As a direct and proximate result of New GM's breach of the warranties of merchantability, Plaintiffs and the Pennsylvania Class members have been damaged in an amount to be proven at trial.

**SOUTH DAKOTA**

**CLAIM 40**
**VIOLATION OF THE SOUTH DAKOTA**
**DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION**
**LAW (S.D. CODIFIED LAWS § 37-24-6)**

733.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

734.    This claim is brought only on behalf of Class Members who are South Dakota residents (the "South Dakota Class").

735.    The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, which are defined for relevant purposes to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby [1" S.D. CODIFIED LAWS

184

§ 37-24-6(1). The conduct of New GM as set forth herein constitutes deceptive acts or practices, fraud, false promises, misrepresentation, concealment, suppression and omission of material facts in violation of S.D. Codified Laws § 37-24-6 and 37-24-31, including, but not limited to, New GM's misrepresentations and omissions regarding the safety and reliability of the class vehicles, and New GM's misrepresentations concerning a host of other defects and safety issues.

736.   New GM's actions as set forth above occurred in the conduct of trade or commerce.

737.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the class vehicles.

738.   From the date of its inception on July 10, 2009, New GM knew of many defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.   New GM became aware of

other serious defects and systemic safety issues years ago, but concealed all of that information.

739.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all class vehicles. New GM concealed this information as well.

740.   By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the South Dakota CPL.

741.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the many defects.   New GM compounded the deception by repeatedly asserting that class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

742.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and

reliability of the class vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

743.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

744.   The many material defects in the class vehicles were not readily discoverable by consumers.

745.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the South Dakota Class.

746.   New GM knew or should have known that its conduct violated the South Dakota CPL.

747.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

748.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that

187

this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

      (b)    Intentionally concealed the foregoing from Plaintiffs; and/or

      (c)    Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

749.   Because New GM fraudulently concealed the many defects in the class vehicles, the value of the class vehicles has greatly diminished. In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

750.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the South Dakota Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

751.   Plaintiffs and the South Dakota Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have

188

purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's conduct.

752.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the South Dakota CPL. And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business.

753.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

754.   As a direct and proximate result of New GM's violations of the South Dakota CPL, Plaintiffs and the South Dakota Class have suffered injury-in-fact and/or actual damage.

755.   Under S.D. CODIFIED LAWS § 37-24-31, Plaintiffs and the South Dakota Class are entitled to a recovery of their actual damages suffered as a result of New GM's acts and practices.

## CLAIM 41
## FRAUD BY CONCEALMENT

756.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

757.   This claim is brought on behalf of Class Members who are South Dakota residents (the "South Dakota Class").

758.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the GM brand.

759.   New GM concealed and suppressed material facts concerning the culture of New GM — a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

760.   New GM concealed and suppressed material facts concerning the many serious defects plaguing the class vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

761.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles

after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

762.   New GM had a duty to disclose the many defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the South Dakota Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the South Dakota Class.  Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

763.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the South Dakota Class.

764.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the South Dakota Class and conceal material information regarding defects that exist in the class vehicles.

765.   Plaintiffs and the South Dakota Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the South Dakota Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the South Dakota Class.

766.   Because of the concealment and/or suppression of the facts, Plaintiffs and the South Dakota Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely

disclose, the serious defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

767. The value of all South Dakota Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have greatly tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

768. Accordingly, New GM is liable to the South Dakota Class for damages in an amount to be proven at trial.

769. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the South Dakota Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 42
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (S.D. CODIFIED LAWS § 57A-2-314)

770. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

771. This claim is brought only on behalf of South Dakota residents who are Class Members (the "South Dakota Class") who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

772. New GM was a merchant with respect to motor vehicles.

773. South Dakota law imposed a warranty that the New GM-manufactured class vehicles were in merchantable condition when Plaintiffs and the South Dakota Class purchased or leased their class vehicles from New GM on or after July 10, 2009.

774. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured class vehicles are inherently defective in that there are defects which cause inordinate and unusual early wear and failure of engines.

775. As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the South Dakota Class members have been damaged in an amount to be proven at trial.

**TENNESSEE**

## CLAIM 43
## VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT
## (TENN. CODE ANN. § 47-18-101, et seq.)

776. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

777. This claim is brought only on behalf of Class Members who are Tennessee residents (the "Tennessee Class").

778. Plaintiffs and the Tennessee Class are "natural persons" and "consumers" within the meaning of TENN. CODE ANN. § 47-18-103(2).

779. New GM is a "person" within the meaning of TENN. CODE ANN. § 47-18-103(2).

780. New GM's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of TENN. CODE ANN. § 47-18-103(19).

781. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have ... characteristics, [or] ... benefits ... that they do not have...;" "Representing that goods or services are of a particular standard, quality or grade... if they are of another;" and "Advertising goods or services with intent not to sell them as

195

advertised." TENN. CODE ANN. § 47-18-104. New GM violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that class vehicles have characteristics or benefits that they did not have; representing that class vehicles are of a particular standard, quality, or grade when they are of another; and advertising class vehicles with intent not to sell them as advertised.

782.   In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.  New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of class vehicles.

783.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

784. New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all the class vehicles. New GM concealed this information as well.

785. By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in unfair and deceptive business practices in violation of the Tennessee CPA.

786. In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

787. New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

197

788. New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

789. The many material defects in the class vehicles were not readily discoverable by consumers.

790. New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Tennessee Class.

791. New GM knew or should have known that its conduct violated the Tennessee CPA.

792. As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

793. New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)     Intentionally concealed the foregoing from Plaintiffs; and/or

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

794.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

795.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Tennessee Class. A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedies them.

796.   Plaintiffs and the Tennessee Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

199

797.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Tennessee CPA.  And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

798.   As a direct and proximate result of New GM's violations of the Tennessee CPA, Plaintiffs and the Tennessee Class have suffered injury-in-fact and/or actual damage.

799.   Pursuant to TENN. CODE § 47-18-109(a), Plaintiffs and the Tennessee Class seek monetary relief against New GM measured as actual damages in an amount to be determined at trial, treble damages as a result of New GM's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

## CLAIM 44
## FRAUD BY CONCEALMENT

800. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

801. This claim is brought on behalf of Class Members who are Tennessee residents (the "Tennessee Class").

802. New GM concealed and suppressed material facts concerning the quality of the class vehicles.

803. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

804. New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

805. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality

and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

806.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Tennessee Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Tennessee Class.

807.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Tennessee Class.

808.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Tennessee Class and conceal material information regarding defects that exist in the class vehicles.

809.   Plaintiffs and the Tennessee Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Tennessee Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Tennessee Class.

810.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Tennessee Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in the class vehicles and the quality issues engendered by New GM's corporate policies. Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would

not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

811. The value of all Tennessee Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

812. Accordingly, New GM is liable to the Tennessee Class for damages in an amount to be proven at trial.

813. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Tennessee Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**TEXAS**

**CLAIM 45**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES –**
**CONSUMER PROTECTION ACT**
**(TEX. BUS. & COM. CODE §§ 17.41, et seq.)**

814. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

815.   This claim is brought only on behalf of Class Members who are Texas residents (the "Texas Class").

816.   Plaintiffs and the Texas Class are individuals, partnerships and corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets). See TEX. BUS. & COM. CODE § 17.41.

817.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of false, misleading or deceptive act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b); (ii) "breach of an express or implied warranty" or (iii) "an unconscionable action or course of action by any person." TEX. BUS. & COM. CODE § 17.50(a)(2) & (3).

818.   An "unconscionable action or course of action," means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). As detailed herein, New GM has engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Class.

819. New GM has also breached the implied warranty of merchantability with respect to the Texas Class members who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009, as set forth in Texas Count III below.

820. New GM has also violated the specifically enumerated provisions of TEX. BUS. & COM. CODE § 17.46(b) by, at a minimum: (1) representing that the class vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the class vehicles are of a particular standard, quality, and grade when they are not; (3) advertising the class vehicles with the intent not to sell them as advertised; (4) failing to disclose information concerning the class vehicles with the intent to induce consumers to purchase or lease the class vehicles.

821. In the course of its business, New GM systematically devalued safety and concealed defects in the class vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the class vehicles.

822. From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting many models and years of the class vehicles, because of (i)

206

the knowledge of Old GM personnel who remained at New GM; (ii) continuous reports, investigations, and notifications from regulatory authorities; and (iii) ongoing performance of New GM's TREAD Act obligations.  New GM became aware of other serious defects and systemic safety issues years ago, but concealed all of that information.

823.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in all the class vehicles. New GM concealed this information as well.

824.   By failing to disclose and by actively concealing the many defects in the class vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive and unconscionable business practices in violation of the Texas DTPA.

825.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects discussed above. New GM compounded the deception by repeatedly asserting that the class vehicles were

safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

826.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the class vehicles, the quality of the GM brand, the devaluing of safety at New GM, and the true value of the class vehicles.

827.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

828.   The many material defects in the class vehicles were not readily discoverable by consumers.

829.   New GM intentionally and knowingly misrepresented material facts regarding the class vehicles with the intent to mislead Plaintiffs and the Texas Class.

830.   New GM knew or should have known that its conduct violated the Texas DTPA.

831.   As alleged above, New GM made material statements about the safety and reliability of the class vehicles and the GM brand that were either false or misleading.

832.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM:

(a)     Possessed exclusive knowledge that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this

approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured;

(b)     Intentionally concealed the foregoing from Plaintiffs; and/or

(c)     Made incomplete representations about the safety and reliability of the class vehicles generally, and the valve guide defects in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

833.   Because New GM fraudulently concealed the defects in the class vehicles, the value of the class vehicles has greatly diminished.  In light of the stigma attached to those vehicles by New GM's conduct, they are now worth significantly less than they otherwise would be.

834.   New GM's systemic devaluation of safety and its concealment of the defects in the class vehicles were material to Plaintiffs and the Texas Class.  A vehicle made by a reputable manufacturer of vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of vehicles that conceals defects rather than promptly remedying them.

835.   Plaintiffs and the Texas Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs who purchased class vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.   Under TEX. BUS. & COM. CODE § 17.50(b)(1), Plaintiffs are entitled to recover such economic damages.

836.   As set forth above and in Texas Count III below, New GM breached of the implied warranty of merchantability with respect to the Texas Class members who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009, and engaged in that unconscionable actions and unconscionable course of action "knowingly," which means it did so with "actual awareness of the fact of the act, practice, condition, defect or failure constituting the breach of warranty" and with "actual awareness, at the time of the act or practice complained of, of the falsity, deception or unfairness of the act or practice giving rise to the consumer's claim...." TEX. BUS. & COM. CODE § 17.45(9). Accordingly, pursuant to TEX. BUS. COM. CODE § 17.50(b)(1), Members of the Texas Class who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009 are entitled to additional damages in an amount up to three times the amount of economic damages.

837.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their vehicles. By agreeing to comply with TREAD Act responsibilities with respect to Old GM class vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c).  New GM had an ongoing duty to all GM vehicle owners to refrain from unfair and deceptive acts or practices under the Texas DTPA.  And, in any event, all class vehicle owners suffered ascertainable loss in the form of the diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

838.   Pursuant to TEX. BUS. & COM. CODE § 17.50(a)(1) and (b), Plaintiffs and the Texas Class seek monetary relief against New GM measured as actual damages in an amount to be determined at trial, treble damages for New GM's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

839.   Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE § 17.50(b)(3) & (4), Plaintiffs and the Texas Class and all other Texas Class members who purchased vehicles from New GM on or after July 10, 2009 are entitled to disgorgement or to rescission or to any other relief necessary to restore

any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

840. The Texas Plaintiffs and the Texas Class also are also entitled to recover court costs and reasonable and necessary attorneys' fees under § 17.50(d) of the Texas DTPA.

## CLAIM 46
## FRAUD BY CONCEALMENT

841. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

842. This claim is brought on behalf of Class Members who are Texas residents (the "Texas Class").

843. New GM concealed and suppressed material facts concerning the quality of the class vehicles.

844. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of quality issues, and a shoddy design process.

845. New GM concealed and suppressed material facts concerning the defects in the class vehicles, and that it valued cost-cutting over quality and took steps to ensure that its employees did not reveal known defects to regulators or consumers.

846.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles and Certified Previously Owned vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of the class vehicles and because the representations played a significant role in the value of the vehicles.

847.   New GM had a duty to disclose the defects in the class vehicles because they were known and/or accessible only to New GM, were in fact known to New GM as of the time of its creation in 2009 and at every point thereafter, New GM had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiffs and the Texas Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in its vehicles, as set forth above, which were misleading, deceptive and incomplete without the disclosure of the additional facts set forth above regarding defects in the class vehicles.  Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the class vehicles purchased or leased by Plaintiffs and the Texas Class.

848.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Texas Class.

849.   On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Texas Class and conceal material information regarding defects that exist in the class vehicles.

850.   Plaintiffs and the Texas Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased cars manufactured by Old GM after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the vehicles; and/or would not have continued to drive their vehicles or would have taken other affirmative steps. Plaintiffs' and the Texas Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Texas Class.

851.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Texas Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the

defects in the class vehicles and the quality issues engendered by New GM's corporate policies.  Had they been aware of the defects that existed in the class vehicles, Plaintiffs who purchased new or Certified Previously Owned vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their vehicles.

852.   The value of all Texas Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects which have tarnished the Corvette brand and made any reasonable consumer reluctant to purchase any of the class vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

853.   Accordingly, New GM is liable to the Texas Class for damages in an amount to be proven at trial.

854.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Texas Class's rights and well-being to enrich New GM.  New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 47
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (TEX. BUS. & COM. CODE § 2.314)

855.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

856.   This claim is brought only on behalf of the Texas Class members who purchased or leased class vehicles manufactured by New GM on or after July 10, 2009.

857.   New GM was a merchant with respect to motor vehicles under TEX. BUS. & COM. CODE § 2.104.

858.   Under TEX. BUS. & COM. CODE § 2.314, a warranty that the New GM-manufactured class vehicles were in merchantable condition was implied by law in the transaction in which Plaintiffs and the Texas Class purchased or leased their class vehicles from New GM on or after July 10, 2009.

859.   New GM impliedly warranted that the New GM-manufactured class vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

860.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured class vehicles are inherently defective in

that there are defects in the engine that result in premature unusual wear and catastrophic failure.

861.   As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiffs and the Texas Class have been damaged in an amount to be proven at trial.

## UTAH

**CLAIM 48**
**VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT**
**(UTAH CODE ANN. § 13-11-1, et seq.)**

862.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

863.   This claim is brought only on behalf of purchases of leases of Corvette Z06 vehicles who are Utah residents (the "Utah Class").

864.   New GM is a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), UTAH CODE ANN. § 13-11-3.

865.   Utah Class Members are "persons" under UTAH CODE ANN. § 13-11-3.

866.   The sale of the Corvette Z06 vehicles to the Utah Class Members was a "consumer transaction" within the meaning of UTAH CODE ANN. § 13-11-3.

867.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under UTAH CODE ANN. §

13-11-4. Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." UTAH CODE ANN. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. UTAH CODE ANN. § 13-11-5.

868.   New GM committed deceptive acts or practices in the conduct of trade or commerce, by, among other things, engaging in unconscionable acts, representing that these vehicles have characteristics, uses, benefits, and qualities which they do not have; and representing that these vehicles are of a particular standard, quality, and grade when they are not.

869.   In the course of its business, New GM systematically devalued safety and concealed defects in Corvette Z06 vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of vehicles.

218

870.   From the date of its inception on July 10, 2009, New GM knew of serious defects affecting Corvette Z06 vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) Old GM documents and databases that transferred to New GM; (iii) continuous reports, investigations, and notifications from regulatory authorities; and (iv) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of these defects and safety issues in Corvette Z06 vehicles years ago, but has concealed all of that information.

871.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects and failures in the vehicles it designed and manufactured and the failure to disclose and remedy defects in Corvette Z06 vehicles. New GM concealed this information as well.

872.   By failing to disclose and by actively concealing the defects in Corvette Z06 vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Utah CSPA.

873.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the safety issues and defects discussed above. New GM compounded the deception by repeatedly asserting that Corvette Z06 vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

874.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Corvette Z06 vehicles, the devaluing of safety at New GM, and the true value of these vehicles.

875.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

876.   The many material defects in the class vehicles were not readily discoverable by consumers.

877.   New GM intentionally and knowingly misrepresented material facts regarding these vehicles with the intent to mislead Plaintiffs and the Utah Class.

878.   New GM knew or should have known that its conduct violated the Utah CSPA.

879.   As alleged above, New GM made material statements about the safety and reliability of these vehicles that were either false or misleading.

880.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the vehicles and the devaluing of safety at New GM, because New GM intentionally concealed the foregoing from Plaintiffs; and/or made incomplete representations about the safety and reliability of these vehicles while purposefully withholding material facts from Plaintiffs that contradicted these representations.

881.   New GM's systemic devaluation of safety and its concealment of defects in Corvette Z06 vehicles were material to Plaintiffs and the Utah Class. A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

882.   Plaintiffs and the Utah Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased Corvette Z06 vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all.

883.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their Corvette Z06 vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to

vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to these vehicle owners refrain from unfair and deceptive acts or practices under the Utah CSPA. And, in any event, all owners of Corvette Z06 vehicles suffered ascertainable loss in the form of the diminished value of their vehicles, and diagnostic and repair costs as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

884.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

885.   As a direct and proximate result of New GM's violations of the Utah CSPA, Plaintiffs and the Utah Class have suffered injury-in-fact and/or actual damage.

886.   Pursuant to UTAH CODE ANN. § 13-11-4, Plaintiffs and the Utah Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for each Plaintiff and each Utah Class member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## CLAIM 49
## FRAUD BY CONCEALMENT

887.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

888. This claim is brought on behalf of class members who are Utah residents (the "Utah Class").

889. New GM concealed and suppressed material facts concerning the quality of its Corvette Z06 vehicles.

890. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

891. New GM concealed and suppressed material facts concerning the serious defects plaguing Corvette Z06 vehicles and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

892. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Corvette Z06 vehicles that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of these vehicles and because the representations played a significant role in the value of the vehicles.

893. New GM had a duty to disclose the defects in Corvette Z06 vehicles and Old GM vehicles because they were known and/or accessible only to New GM; New GM had superior knowledge and access to the facts; and New GM knew the

facts were not known to, or reasonably discoverable, by Plaintiffs and the Utah Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in Corvette Z06 vehicles as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in these vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of these vehicles purchased or leased by Plaintiffs and the Utah Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind the products whose safety it is responsible for ensuring, are material concerns to a consumer.

894.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Utah Class.

895.   New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Utah Class and conceal material information regarding defects that exist in Corvette Z06 vehicles.

896.   Plaintiffs and the Utah Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased cars manufactured by New GM; and/or they would not have purchased used Corvette Z06 vehicles after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the New GM and Old GM vehicles; and/or would not have continued to drive their Corvette Z06 vehicles or would have taken other affirmative steps. Plaintiffs' and the Utah Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Utah Class.

897.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Utah Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects in these vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Also, they have incurred diagnostic and repair costs because of these defects.  Had they been aware of the many concealed defects that existed in Corvette Z06 vehicles and New GM's callous disregard for safety, Plaintiffs who purchased these vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them

at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their Corvette Z06 vehicles.

898. The value of all Utah Class Members' vehicles has diminished as a result of New GM's fraudulent concealment of the defects and safety issues which have greatly tarnished the Corvette Z06 brand and made any reasonable consumer reluctant to purchase any of these vehicles, let alone pay what otherwise would have been fair market value for the vehicles. Also, the Utah Class has incurred diagnostic and repair costs because of these defects.

899. Accordingly, New GM is liable to the Utah Class for damages in an amount to be proven at trial.

900. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Utah Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### CLAIM 50
### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (UTAH CODE ANN. § 70A-2-314)

901. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

902.   This claim is brought only on behalf of Utah residents who purchased or leased a Corvette Z06 vehicle manufactured by New GM after July 10, 2009.

903.   New GM was at all relevant times a merchant with respect to motor vehicles.

904.   New GM impliedly warranted that its vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

905.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the New GM-manufactured class vehicles are inherently defective in that there are defects in the valve train and engine that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and catastrophic engine failure resulting in engine oil being spewed under the rear tires of the vehicle.

906.   As a direct and proximate result of the New GM's breach of the implied warranty of merchantability, the Utah class members have been damaged in an amount to be proven at trial.

**VIRGINIA**

227

## CLAIM 51
## VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT
## (VA. CODE ANN. 15 §§ 59.1-196, et seq.)

907.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

908.   This claim is brought only on behalf of class members who are Virginia residents (the "Virginia Class").

909.   New GM is a "supplier" under VA. CODE ANN. § 59.1-198.

910.   The sale of the Corvette Z06 vehicles to the class members was a "consumer transaction" within the meaning of VA. CODE ANN. § 59.1-198.

911.   The Virginia Consumer Protection Act ("Virginia CPA") lists prohibited "practices" which include: "5. Misrepresenting that goods or services have certain characteristics;" "6. Misrepresenting that goods or services are of a particular standard, quality, grade style, or model;" "8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" "9. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "14. Using any other deception, fraud, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200. New GM violated the Virginia CPA by misrepresenting that Corvette Z06 vehicle had certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that these vehicles

228

were of a particular standard, quality, grade, style, or model when they were another; advertising these vehicles with intent not to sell them as advertised; and otherwise "using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

912.   In the course of its business, New GM systematically devalued safety and concealed defects in Corvette Z06 vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of these vehicles.

913.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting Corvette Z06 vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) Old GM documents and databases that transferred to New GM; (iii) continuous reports, investigations, and notifications from regulatory authorities; and (iv) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of these defects and safety issues in Corvette Z06 vehicles and years ago, but has concealed all of that information.

914.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of more defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in Corvette Z06 vehicles. New GM concealed this information as well.

915.   By failing to disclose and by actively concealing the defects Corvette Z06 vehicles by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Virginia CPA.

916.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the safety issues and defects discussed above. New GM compounded the deception by repeatedly asserting that Corvette Z06 vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

917.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and

reliability of Corvette Z06 vehicles, the devaluing of safety at New GM, and the true value of these vehicles.

918.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

919.   The many material defects in the class vehicles were not readily discoverable by consumers.

920.   New GM intentionally and knowingly misrepresented material facts regarding these vehicles with the intent to mislead Plaintiffs and the Virginia Class.

921.   New GM knew or should have known that its conduct violated the Virginia CPA.

922.   As alleged above, New GM made material statements about the safety and reliability of these vehicles that were either false or misleading.

923.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of the class vehicles and the devaluing of safety at New GM, because New GM intentionally concealed foregoing from Plaintiffs; and/or made incomplete representations about the safety and reliability of these vehicles while purposefully withholding material facts from Plaintiffs that contradicted these representations.

924.   New GM's systemic devaluation of safety and its concealment of defects in Corvette Z06 vehicles were material to Plaintiffs and the Virginia Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an

otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

925. Plaintiffs and the Virginia Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased Corvette Z06 vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of New GM's misconduct.

926. Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their Corvette Z06 vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all Corvette Z06 vehicle owners, to refrain from unfair and deceptive acts or practices under the Virginia CPA. And, in any event, all owners of Corvette Z06 vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of New GM's deceptive and unfair acts and practices made in the course of New GM's business, and diagnostic and repair costs caused by these defects.

927.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

928.   As a direct and proximate result of New GM's violations of the Virginia CPA, Plaintiffs and the Virginia Class have suffered injury-in-fact and/or actual damage.

929.   Pursuant to VA. CODE ANN. § 59.1-204, Plaintiffs and the Virginia Class seek monetary relief against New GM measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and each Virginia Class member. Because New GM's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff and each Virginia Class member, the greater of (a) three times actual damages or (b) $1,000.

930.   Plaintiffs also seek an order enjoining New GM's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under General Business Law § 59.1-204, et seq.

## CLAIM 52
## FRAUD BY CONCEALMENT

931.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

932.   This claim is brought on behalf of class members who are Virginia residents (the "Virginia Class").

933.   New GM concealed and suppressed material facts concerning the quality of its vehicles and the New GM brand.

934.   New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

935.   New GM concealed and suppressed material facts concerning the serious defects plaguing Corvette Z06 vehicles and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

936.   New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Corvette Z06 vehicles, that New GM was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of these vehicles and because the representations played a significant role in the value of the vehicles.

937.   New GM had a duty to disclose the defects in Corvette Z06 vehicles because they were known and/or accessible only to New GM; New GM had superior knowledge and access to the facts; and New GM knew the facts were not known to,

or reasonably discoverable, by Plaintiffs and the Virginia Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in Corvette Z06 vehicles, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Corvette Z06 vehicles purchased or leased by Plaintiffs and the Virginia Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind the products whose safety it is responsible for ensuring, are material concerns to a consumer.

938.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Virginia Class.

939.   New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Virginia Class and conceal material information regarding defects that exist in Corvette Z06 vehicles.

940.   Plaintiffs and the Virginia Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased Corvette Z06 cars manufactured by New GM; and/or they would not have purchased used such vehicles after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the New GM and Old GM vehicles; and/or would not have continued to drive their Corvette Z06 vehicles or would have taken other affirmative steps. Plaintiffs' and the Virginia Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Virginia Class.

941.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Virginia Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the serious defects in Corvette Z06 vehicles and the serious safety and quality issues engendered by New GM's corporate policies and incurred diagnostic and repair costs caused by these defects. Had they been aware of the many concealed defects that existed in GM-branded vehicles and Old GM vehicles, and New GM's callous disregard for safety, Plaintiffs who purchased Corvette Z06 vehicles after New GM came into existence either would have paid less for their vehicles or would not have

purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their Corvette Z06 vehicles.

942.   The value of all Virginia Class Members' Corvette Z06 vehicles has diminished as a result of New GM's fraudulent concealment of the defects and its safety issues which have greatly tarnished the New GM brand and made any reasonable consumer reluctant to purchase any of these vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

943.   Accordingly, New GM is liable to the Virginia Class for damages in an amount to be proven at trial.

944.   New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Virginia Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CLAIM 53
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (VA. CODE ANN. § 8.2-314)

945.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

946.   This claim is brought on behalf of Virginia residents who purchased or leased a Corvette Z06 vehicle manufactured by New GM after July 10, 2009.

947.   New GM was at all relevant times a merchant with respect to motor vehicles.

948.   New GM impliedly warranted that its vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use – transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

949.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Corvette Z06 vehicles manufactured by New GM are inherently defective in that there are defects in the valve train and engine that permit sudden unintended shutdown to occur, with the attendant shut down of power steering and power brakes and catastrophic engine failure which spews engine oil under the rear tires and may explode.

950.   As a direct and proximate result of the New GM's breach of the implied warranty of merchantability, Plaintiffs and the Virginia Class members have been damaged in an amount to be proven at trial.

## WISCONSIN

**CLAIM 54**
**VIOLATIONS OF THE WISCONSIN**
**DECEPTIVE TRADE PRACTICES ACT**
**(WIS. STAT. § 110.18)**

951. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

952. This claim is brought only on behalf of class members who are Wisconsin residents (the "Wisconsin Class").

953. New GM is a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

954. Plaintiffs and Wisconsin Class Members are members of "the public" within the meaning of WIS. STAT. § 100.18(1). Plaintiffs and Wisconsin Class Members purchased or leased one or more class vehicles.

955. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT.§ 100.18(1). By systematically devaluing safety and concealing defects in Corvette Z06 vehicles, New GM engaged in unfair and deceptive acts and practices and violated the Wisconsin DTPA.

956. In the course of its business, New GM systematically devalued safety and concealed defects in Corvette Z06 vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

connection with the sale of these vehicles.

957.   From the date of its inception on July 10, 2009, New GM knew of many serious defects affecting Corvette Z06 vehicles, because of (i) the knowledge of Old GM personnel who remained at New GM; (ii) Old GM documents and databases that transferred to New GM; (iii) continuous reports, investigations, and notifications from regulatory authorities; and (iv) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM became aware of these defects and safety issues in Corvette Z06 vehicles years ago, but has concealed all of that information.

958.   New GM was also aware that it valued cost-cutting over safety, selected parts from the cheapest supplier regardless of quality, and actively discouraged employees from finding and flagging known safety defects, and that this approach would necessarily cause the existence of defects in the vehicles it designed and manufactured and the failure to disclose and remedy defects in Corvette Z06 vehicles. New GM concealed this information as well.

959.   By failing to disclose and by actively concealing the defects in Corvette Z06 vehicles, by marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, New GM engaged in deceptive business practices in violation of the Wisconsin DTPA.

960.   In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the safety issues and defects discussed above. New GM compounded the deception by repeatedly asserting that Corvette Z06 vehicles were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

961.   New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Corvette Z06 vehicles, the quality of the New GM brand, the devaluing of safety at New GM, and the true value of the vehicles.

962.   New GM's knowing and willful failure to disclose the material defects in its LS7 engines diminished the value of the class vehicles.

963.   The many material defects in the class vehicles were not readily discoverable by consumers.

964.   New GM intentionally and knowingly misrepresented material facts regarding the vehicles with the intent to mislead Plaintiffs and the Wisconsin Class.

965.   New GM knew or should have known that its conduct violated the Wisconsin DTPA.

966.   As alleged above, New GM made material statements about the safety and reliability of these vehicles and the New GM brand that were either false or misleading.

967.   New GM owed Plaintiffs a duty to disclose the true safety and reliability of these vehicles and the devaluing of safety at New GM, because New GM intentionally concealed the foregoing from Plaintiffs; and/or made incomplete representations about the safety and reliability of these vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

968.   New GM's systemic devaluation of safety and its concealment of defects in Corvette Z06 vehicles were material to Plaintiffs and the Wisconsin Class. A vehicle made by a reputable manufacturer of safe vehicles safer and is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

969.   Plaintiffs and the Wisconsin Class suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased Corvette Z06 vehicles after the date of New GM's inception either would have paid less for their vehicles or would not have purchased or leased them at all. And, Plaintiffs have incurred diagnostic and repair costs caused by these defects.

970.   Regardless of time of purchase or lease, no Plaintiffs would have maintained and continued to drive their Corvette Z06 vehicles had they been aware of New GM's misconduct. By agreeing to comply with TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively assumed the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all Corvette Z06 vehicle owners to refrain from unfair and deceptive acts or practices under the Wisconsin DTPA. And, in any event, all owners of Corvette Z06 vehicles suffered ascertainable loss in the form of the diminished value of their vehicles and diagnostic and repair costs as a result of New GM's deceptive and unfair acts and practices that occurred in the course of New GM's business.

971.   New GM's violations present a continuing risk to Plaintiffs as well as to the general public. New GM's unlawful acts and practices complained of herein affect the public interest.

972.   As a direct and proximate result of New GM's violations of the Wisconsin DTPA, Plaintiffs and the Wisconsin Class have suffered injury-in-fact and/or actual damage.

973.   Plaintiffs and the Wisconsin Class are entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2). Because New GM's

conduct was committed knowingly and/or intentionally, Plaintiffs and the Wisconsin Class are entitled to treble damages.

974. Plaintiffs and the Wisconsin Class also seek court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

## CLAIM 55
## FRAUD BY CONCEALMENT

975. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

976. This claim is brought on behalf of class members who are Wisconsin residents (the "Wisconsin Class").

977. New GM concealed and suppressed material facts concerning the quality of its Corvette Z06 vehicles and the New GM brand.

978. New GM concealed and suppressed material facts concerning the culture of New GM – a culture characterized by an emphasis on cost-cutting, the studious avoidance of safety issues, and a shoddy design process.

979. New GM concealed and suppressed material facts concerning the serious defects plaguing Corvette Z06 vehicles, and that it valued cost-cutting over safety and took steps to ensure that its employees did not reveal known safety defects to regulators or consumers.

980. New GM did so in order to boost confidence in its vehicles and falsely assure purchasers and lessees of Corvette Z06 vehicles, that New GM was a

reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable. The false representations were material to consumers, both because they concerned the quality and safety of these vehicles and because the representations played a significant role in the value of the vehicles.

981. New GM had a duty to disclose the defects in Corvette Z06 vehicles because they were known and/or accessible only to New GM; New GM had superior knowledge and access to the facts; and New GM knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Wisconsin Class. New GM also had a duty to disclose because it made many general affirmative representations about the safety, quality, and lack of defects in Corvette Z06 vehicles, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its actual safety record, safety philosophy, and practices and the actual safety defects in its vehicles. Having volunteered to provide information to Plaintiffs, New GM had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of these vehicles purchased or leased by Plaintiffs and the Wisconsin Class. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind the products whose safety it is responsible for ensuring, are material concerns to a consumer.

982.   New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiffs and the Wisconsin Class.

983.   New GM has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Wisconsin Class and conceal material information regarding defects that exist in Corvette Z06 vehicles.

984.   Plaintiffs and the Wisconsin Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased Corvette Z06 cars manufactured by New GM; and/or they would not have purchased used Corvette Z06 vehicles; after New GM had come into existence and had fraudulently opted to conceal, and to misrepresent, the true facts about the New GM and Old GM vehicles; and/or would not have continued to drive their Corvette Z06 vehicles or would have taken other affirmative steps. Plaintiffs' and the Wisconsin Class's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Wisconsin Class.

985.   Because of the concealment and/or suppression of the facts, Plaintiffs and the Wisconsin Class sustained damage because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely

disclose, the serious defects in Corvette Z06 vehicles and the serious safety and quality issues engendered by New GM's corporate policies. Plaintiffs have also incurred diagnostic and repair costs caused by these defects. Had they been aware of the many concealed defects that existed in Corvette Z06 vehicles, and New GM's callous disregard for safety, Plaintiffs who purchased Corvette Z06 vehicles after New GM came into existence either would have paid less for their vehicles or would not have purchased or leased them at all; and no Plaintiffs regardless of time of purchase or lease would have maintained their Corvette Z06 vehicles.

986. The value of all Wisconsin Class Members' Corvette Z06 vehicles has diminished as a result of New GM's fraudulent concealment of the defects and its safety issues which have greatly tarnished the Corvette Z06 brand and made any reasonable consumer reluctant to purchase any of these vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

987. Accordingly, New GM is liable to the Wisconsin Class for damages in an amount to be proven at trial.

988. New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Wisconsin Class's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully request that this Court enter a judgment against New GM and in favor of Plaintiffs and the Class, and grant the following relief:

1.      Determine that this action may be maintained as a class action and certify it as such under Rule 23(b)(2) and/or 23(b)(3), or alternatively certify all issues and claims that are appropriately certified under Rule 23(c)(4); and designate and appoint Plaintiffs as Class Representatives and Plaintiffs' chosen counsel as Class Counsel;

2.       Declare, adjudge, and decree the conduct of New GM as alleged herein to be unlawful, unfair, and/or deceptive and otherwise in violation of law, enjoin any such future conduct;

3.      Award Plaintiffs and Class Members actual, compensatory damages or, in the alternative, statutory damages, as proven at trial;

4.      Award Plaintiffs and the Class Members exemplary damages in such amount as proven;

5.      Award damages and other remedies, including, but not limited to, statutory penalties, as allowed by any applicable law, such as the consumer laws of the various states;

6.     Award Plaintiffs and the Class Members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest;

7.     Award Plaintiffs and Class Members restitution and/or disgorgement of New GM's ill-gotten gains relating to the conduct described in this Complaint; and

8.     Award Plaintiffs and the Class Members such other further and different relief as the case may require or as determined to be just, equitable, and proper by this Court.

Dated: March 3, 2020

Respectfully submitted,

**MANTESE HONIGMAN P.C.**
*Attorney for Plaintiffs*

By: */s/David M. Honigman*
David M. Honigman (P33416)
dhonigman@manteselaw.com
Douglas L. Toering (P34329)
dtoering@manteselaw.com
Kenneth Chadwell (P39121)
Kchadwell@manteselaw.com
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: 248-457-9200
Fax: 248-457-9201

**KNAPP, PETERSEN & CLARKE**
*Attorney for Plaintiffs*

By: /s/Andre E. Jardini
André E. Jardini, Bar No. 71335
aej@kpclegal.com
K.L. Myles, Bar No. 243272
klm@kpclegal.com
Michael D. Carr, Bar No. 322261
mdc@kpclegal.com
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone:  (818) 547-5000
Facsimile:  (818) 547-5329

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury in the above-captioned matter.

Dated: March 3, 2020

Respectfully submitted,

**MANTESE HONIGMAN P.C.**
*Attorney for Plaintiffs*

By: */s/David M. Honigman*
David M. Honigman (P33416)
dhonigman@manteselaw.com
Douglas L. Toering (P34329)
dtoering@manteselaw.com
Kenneth Chadwell (P39121)
Kchadwell@manteselaw.com
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: 248-457-9200
Fax: 248-457-9201

**KNAPP, PETERSEN & CLARKE**
*Attorney for Plaintiffs*

By: */s/Andre E. Jardini*
André E. Jardini, Bar No. 71335
aej@kpclegal.com
K.L. Myles, Bar No. 243272
klm@kpclegal.com
Michael D. Carr, Bar No. 322261
mdc@kpclegal.com
550 North Brand Boulevard, Suite 1500
Glendale, California 91203-1922
Telephone:  (818) 547-5000
Facsimile:  (818) 547-5329