UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ESTATE OF WILLIAM D. PILGRIM,** et al., | **2:20-CV-10562-TGB-DRG** |
| Plaintiffs, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| **GENERAL MOTORS LLC,** | |
| Defendant. | |

This is a large putative class action: forty-four Named Plaintiffs seek to sue General Motors ("GM") over an alleged defect in the LS7 engine that they say affected Corvette 427s (model year 2013) and Z06s (model years 2006-2013), in some cases causing catastrophic injury to drivers. There are 63 counts in the 309-page Amended Complaint, which includes federal law claims as well as state law claims for fraudulent concealment, consumer protection, and warranty breach under the laws of 22 states. ECF No. 15-1. For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART**.

A summary of the counts that survive and those that do not is included in the Table of Claims that follows the Order.

1

Table of Contents

I.    BACKGROUND ..............................................................................3

   A.    Alleged defects of the class vehicles...............................3

   B.    Procedural history and bankruptcy order ......................5

   C.    Structure of claims in the Amended Complaint and Motion to Dismiss......................................................................................7

II.   STANDARD OF REVIEW ............................................................8

III.  ANALYSIS .....................................................................................10

   A.    Standing .................................................................................10

   B.    Deficiencies in Implied Warranty of Merchantability (IMW) claims ........................................................................................12

      1.    Plaintiffs who bought Old GM vehicles ....................13

      2.    Sufficiency of allegations regarding merchantability..............13

      3.    Song-Beverly Consumer Warranty Act claim..........................15

      4.    MMWA claim.....................................................................15

   C.    Deficiencies in common law fraud claims...................................17

      1.    Sufficiency of 9(b) allegations ..................................18

      2.    Failure to allege a duty to disclose............................21

   D.    Viability of claims due to the economic loss doctrine.................27

      1.    Negligence claims barred by economic loss doctrine .............28

      2.    Fraud claims barred by economic loss doctrine.......................29

   E.    Consumer protection claims ...........................................32

      1.    Sufficiency of consumer protection claim allegations..............32

      2.    California claim (Count 8) barred by law ..................33

      3.    Maryland Plaintiff does not allege the required "cognizable injury" (Count 24).................................................................33

      4.    Oklahoma Plaintiff's claim (Count 42) is time-barred ............34

      5.    Georgia Plaintiffs lack standing (Count 15) ............35

CONCLUSION ......................................................................................36

# I.   BACKGROUND

## A.   Alleged defects of the class vehicles

Plaintiffs in this case all bought one of two different Corvette models (427, model year 2013, or Z06, model years 2006-2013) with an LS7 engine. ¶ 1, ECF No. 15-1, PageID.617. They allege that defects in the "design, manufacture, and assembly of these subject engines" make the engines susceptible to frequent mechanical failure due to "valve guide wear," leading to dangerous conditions where oil leaks under the vehicle, fouling the back tires and in some cases causing engine parts to explode. ¶¶ 4-5. Even if an individual does not suffer a catastrophic failure event, he or she can incur heavy repair costs to get the valve guides back in spec or to replace the engine altogether. ¶ 25.

As Plaintiffs' Amended Complaint includes only a barebones explanation as to what "valve guide wear" is, some elaboration is necessary. Most combustion engines have some sort of valve system that regulates gas flow into the engine. The valves themselves have thin tubes, or stems, with a round disk at the end known as the valve plug or head. The valve closes when the valve plug makes contact with the valve seat, creating a seal. The valve guide is a cylinder that holds the valve stem and



*Figure 1: Diagram of a typical engine valve.*

allows it to travel up and down as needed to seal and unseal. "Valve guide wear," the condition that Plaintiffs claim occurs in these engines, happens when the inner walls of the valve guide cylinder wear down, creating too much space ("clearance") between the valve stem and the sides of the guide. This can prevent the valve from seating properly in the valve seat, and can also pull excess oil into the engine or the exhaust system, leading to damage or malfunction. The clearance between the valve stem and the sides of the valve guide must therefore be maintained at an acceptable measurement to maintain engine and vehicle integrity. *See generally* Valve Guide Repair Options, *Engine Builder Magazine*, https://perma.cc/UX4A-7YA8.

Plaintiffs allege that GM has known about a defect with LS7 engines that leads to valve guide wear since this engine was first developed, and that GM's own engineers have posted on public forums about the subject. They further allege that GM has concealed from consumers the extent of knowledge they have about this alleged defect, instead characterizing any problems consumers experience as related to a manufacturing defect that only affects a small number of cars. ¶¶ 9-10, 23. Plaintiffs say that public forum posts by GM engineers "falsely assert[] that the problems arose from a single supplier and were limited to a short period of time from July 2008 to March 2009." ¶¶ 12-15; *see* C6 Z06 Question for Tadge Juechter, Corvette Forum,

4

https://www.corvetteforum.com/forums/ask-tadge/3609003-answered-c6-z06-question-for-tadge-juechter.html.

At some point during the life of these engines, GM developed a "valve wiggle test" for dealerships or technicians to use to determine whether valves guides in LS7 engines were out of spec. ¶ 21. Plaintiffs allege that this test "lead to more repairs and investigations than [GM] wished to perform," causing GM to stop using it. ¶ 22. GM has never issued a recall for these engines. Plaintiffs also allege that, in an effort to "tamp down the furor" of public opinion regarding these vehicles, GM engaged a third-party review author to write a review of this engine indicating that the defect was "rare" and only confined to certain model years. ¶ 17; *see* Hib Halverson, "Ruthless Pursuit of Power: Lucky Seven Edition: The Mystique of the 7-Liter, 7000-RPM, LS7," Corvette Action Center (Updated November 2014), https://perma.cc/D3ZL-ZKJF.

### B. Procedural history and bankruptcy order

The claims in this case were originally brought in 2015 in the United States District Court for the Central District of California, where all non-California plaintiffs were dismissed for lack of personal jurisdiction. *Pilgrim v. Gen. Motors Co.*, 408 F. Supp. 3d 1160, 1169 (C.D. Cal. 2019).[1] The dismissed plaintiffs have re-filed here. This case also

---

[1] The case in California was eventually dismissed at the summary judgment stage. *Pilgrim v. Gen. Motors Co.*, No. CV 15-8047-JFW (EX), 2020 WL 7222098, at *13 (C.D. Cal. Nov. 19, 2020).

implicates a series of orders and appeals stemming from GM's bankruptcy proceedings. A Sale Order issued on July 10, 2009 demarcated what liabilities the post-bankruptcy "New GM" entity would and would not take on from the pre-bankruptcy "Old GM." Since then, courts have been left to interpret this document whenever cases like this are filed against GM, and have particularly focused on a provision of the Sale Order that indicates Old GM was selling its assets to new GM "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability."[2]

Old GM filed for bankruptcy protection in June 2009; vehicles manufactured in Model Year 2010 and later were manufactured by New GM. This timeline is relevant in this case because the class vehicle definition encompasses model years from 2006-2013, and therefore includes cars that were manufactured both before and after the bankruptcy. In light of rulings in other courts interpreting the Sale Order, Plaintiffs here have stipulated that any warranty and negligence claims will be brought only on behalf of Class Members who purchased or leased class vehicles manufactured by New GM (on or after July 10, 2009). ECF No. 21, PageID.1056. Other claims, such as (1) warranty

---

[2] The Second Circuit's decision in *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 144-48 (2d Cir. 2016) includes a detailed and helpful explanation of the mechanics of the GM bankruptcy.

6

claims against New GM for vehicles manufactured by New GM, and (2) non-warranty claims based on New GM's conduct, are allowed.

### C. Structure of claims in the Amended Complaint and Motion to Dismiss

Plaintiffs allege the following broad categories of claims under federal law and the laws of 22 states:

- Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301
- Negligence
- Fraudulent concealment
- Implied warranty of merchantability ("IWM") (state-specific statutes)
- Consumer protection (state-specific statutes)

There are 63 counts: one for the MMWA, one for negligence on behalf of all the state sub-classes, and the rest proceeding in alphabetical order by state, naming the applicable consumer protection and IWM statutes for each state. Every state has a fraudulent concealment claim for a total of 22 counts; every state has at least one consumer protection claim, Georgia has two, and California has two for a total of 24 consumer protection counts; 14 states have IWM claims; there is also a standalone negligence claim for failure to recall under California law.

GM seeks to dismiss the Amended Complaint in full, and challenges Plaintiffs' claims under various theories as allowed according to Rules 12(b)(1) and 12(b)(6).  In particular, GM challenges:

- A. Standing for the MMWA and negligence claims (under Rule 12(b)(1)); and
- B. Deficiencies in the IWM claims,
- C. Deficiencies in common law fraud claims,

7

D.    Viability of claims due to the economic loss doctrine, and

E.    Consumer protection claims, all under Rule 12(b)(6).

Within each of these broad categories, GM makes numerous arguments as to why claims should be dismissed. Some challenges can be resolved the same way for all claims, while others have state-specific considerations and outcomes. Additionally, some claims could theoretically be dismissed under more than one theory. To promote clarity, the Court will independently address all theories that GM has put forward, even if the resulting analysis shows that certain claims could be dismissed for more than one reason. In the attached Table of Claims, the reason supporting the dismissal of any given count (or reasons, if there are more than one) are listed.

## II.    STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction generally comes in two varieties: a facial attack or a factual attack. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A facial attack on the subject matter jurisdiction alleged in the complaint questions only the sufficiency of the pleading. *Id.* When reviewing a facial attack, the court takes the allegations in the complaint as true. *Id.* At all times, the plaintiff has the burden of proving jurisdiction to survive the motion. *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A factual attack, on the other hand, is not a challenge to the sufficiency of the allegations, but a challenge to the

factual existence of subject matter jurisdiction. On such a motion, "no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *see also* 2 James Wm. Moore, Moore's Federal Practice § 12.30[4] (3d ed. 2000) ("[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.").

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit or claim where the defendant establishes plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id*. In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)).

Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the

9

elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678-79).

### III.   ANALYSIS

#### A.   Standing

Defendant brings two challenges related to standing. Its first argument is a facial attack on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) that the named Plaintiffs lack standing to assert nationwide MMWA (Count 1) or negligence (Count 2) claims, because they do not allege injuries outside of their own states and do not reference other states' laws. ECF No. 21, PageID.1059. Plaintiffs respond that since the MMWA and negligence claims are class-wide allegations, GM is essentially asking the Court to rule on whether they have standing as class representatives. Plaintiffs say this is premature when considering a Motion to Dismiss. ECF No. 24, PageID.1401.

Plaintiffs' position is correct: in this argument, GM is challenging the fitness of these Named Plaintiffs to serve as class representatives for these two class-wide claims. This Court has previously found that when plaintiffs are advancing "claims for relief under the statutes of jurisdictions in which they reside but seek similar relief for absent class members," that makes this Article III standing question "logically antecedent" to the class certification question such that it may be deferred to that stage. *Chapman v. Gen. Motors LLC,* 531 F. Supp. 3d 1257, 1272-75 (E.D. Mich. 2021) (quoting *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 641-42 (E.D. Mich. 2019)) (discussing Sixth Circuit conceptualization of injury as related to standing). In *Chapman*, the plaintiffs came from different states, but all alleged injury related to the CP4 fuel pump used in their truck engines. Here, Plaintiffs all allege injury related to an engine defect that leads to valve guide wear. This is sufficient at this stage. The Court declines to find that any of the Named Plaintiffs lack standing to bring nationwide MMWA or negligence claims on this ground.

However, in its second argument, GM points out that the claims in the Amended Complaint itself expressly limit the MMWA and negligence claims to purchasers or lessees of class vehicles manufactured by "New GM on or after July 10, 2009." ¶¶ 103, 118. Plaintiff may have drawn their claims with this limitation because courts have indicated that the Sale Order approving the GM bankruptcy only allowed such claims to be

11

brought for New GM vehicles; New GM did not inherit any liability for MMWA or negligence claims for vehicles manufactured by Old GM. *See In re Motors Liquidation Co.*, 529 B.R. 510, 598 (Bankr. S.D.N.Y. 2015); *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 143 (2d Cir. 2016). According to the Complaint, only six Plaintiffs (Cannon, Woodall, Lanz, Ward, Pelletier, and Beck) are purchasers of New GM vehicles. The MMWA claim (Count 1) and the negligence claim (Count 2) by their own terms only seek relief for Plaintiffs who purchased vehicles from New GM, that is, after July 10, 2009.   ¶¶ 103, 119. Consequently, only Plaintiffs Cannon, Woodall, Lanz, Ward, Pelletier, and Beck, who bought New GM Corvettes, can state viable claims under the MMWA and negligence theories alleged in the Complaint. While Counts 1 and 2 are pled generally in the name of "Plaintiffs," to the extent that the Amended Complaint attempts to bring claims in Counts 1 and 2 on behalf of any Plaintiff who did not purchase of New GM vehicle, the claims of those Plaintiffs will be dismissed with prejudice.[3]

## B. Deficiencies in implied warranty of merchantability (IWM) claims

Plaintiffs bring 14 IWM claims for state sub-classes under the specific laws of each state.[4] Upon examination of these claims and the

---

[3] Count 11 (negligent failure to recall in California) will be dismissed in full. Although neither party addresses it specifically in their briefs, there are no California plaintiffs with a New GM car, and therefore a negligence claim under California law is not viable.

[4] There are no IWM claims for AL, AZ, FL, GA, IL, KY, TN, and WI.

laws of those states, the Court concludes that 12 of the 14 IWM claims must be dismissed.[5]

### 1. Plaintiffs who bought Old GM vehicles

Again, GM points out that per the language of the Amended Complaint, warranty claims are only being brought on behalf of individuals who bought New GM cars.[6] Of the six individuals who bought New GM cars, only two come from states where an IWM claim is being asserted: Plaintiffs Pelletier and Beck, who bought their cars in Massachusetts and Michigan. Therefore, the 12 IMW claims brought by Plaintiffs who did not purchase New GM vehicles must be dismissed.

### 2. Sufficiency of allegations regarding merchantability

To be merchantable means that a good is "fit for the ordinary purposes for which such goods are used." UCC § 2-314. For those two Plaintiffs that do have New GM vehicles and can bring IWM claims, GM argues that the allegations are insufficient to show the vehicles were

---

[5] Counts 10 (CA), 21 (IN), 26 (MD), 35 (MT), 38 (NJ), 41 (OH), 44 (OK), 47 (PA), 50 (SD), 55 (TX), 58 (UT), and 61 (VA).

[6] In their briefing Plaintiffs argue that any independent conduct of New GM—unrelated to conduct of Old GM—can form the basis of a claim, such that even Plaintiffs with Old GM cars could bring IWM claims. ECF No. 24, PageID.1402-04. While this interpretation of the Sale Order seems correct based on the Second Circuit's opinion in *In Matter of Motors Liquidation Co.*, 829 F.3d 135, 143 (2d Cir. 2016), the fact remains that Plaintiffs did not *plead* IWM claims as applying to any vehicles purchased or leased before July 10, 2009. *See, e.g.*, Count 26, ECF No. 15-1, PageID.765. This argument is therefore irrelevant, and Plaintiffs essentially conceded as much at oral argument.

unmerchantable. ECF No. 21, PageID.1060-62. Specifically, GM argues that "merchantability" in the context of a vehicle simply means to be able to provide transportation; because Beck and Pelletier do not allege that any defect "hindered their ability to drive their vehicles," their allegations fall short. *Id.* at 1061. Plaintiffs argue that GM's definition of merchantability is too narrow. ECF No. 24, PageID.1404-06.

This Court also addressed this issue in *Chapman* and found (as other courts in our district have) that the standard for merchantability must be something higher than what GM argues. *Chapman*, 531 F. Supp. 3d at 1275-76; *see also Matanky*, 370 F. Supp. 3d at 785 (allegation of design defect causing engine to overheat and car to unexpectedly decrease speed is sufficient to show lack of merchantability because "cars are not merchantable merely because they are able to provide transportation. Rather, to be fit for its ordinary purpose, a standard road vehicle must be able to provide safe and reliable transportation and be substantially free of defects."); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 112-14 (E.D. Mich. 2019) (similar argument regarding defective gear shift).

Here, Plaintiffs allege that "defects in the design, manufacture, and assembly" of the class engines lead to "excessive valve guide wear," which can in turn lead to catastrophic engine failure events. ¶¶ 3-5, 7, 9, 96(a), 110. This type of catastrophic failure did occur for 21 of the Named Plaintiffs. ECF No. 24, PageID.1405-06. Even if a class vehicle has not

experienced a malfunction, Plaintiffs' allegations are that it could happen at any time given the allegedly faulty nature of the engine system. At this stage, this is sufficient to allege unmerchantability, and no claims will be dismissed on this ground.

### 3. Song-Beverly Consumer Warranty Act claim

GM next says that the Song-Beverly Consumer Warranty Act Claim (Count 10), which is a California statutory IWM claim, should be dismissed because the Act does not cover claims against the original manufacturer when the consumer good was bought in used condition. *See, e.g., Blissard v. FCA US LLC*, No. LACV1802765JAKJEMX, 2018 WL 6177295, at *9 (C.D. Cal. Nov. 9, 2018) (citing *Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *14 (N.D. Cal. June 1, 2018) (finding that under the Act "the distributor or retailer is liable for the sale of used products, not the original product manufacturer.")). California Plaintiff Moreno bought his car used. ¶ 37, ECF No. 15-1, PageID.626. Plaintiffs concede this point. ECF No. 24, PageID.1404 n.2. Count 10 is therefore dismissed on this ground.

### 4. MMWA claim

Lastly, GM argues that the nationwide IWM claim under the MMWA should be dismissed because Plaintiffs do not meet the statute's requirements for bringing a claim. Specifically, it states Plaintiffs do not meet the MMWA requirements to have (1) viable state law warranty claims and (2) least 100 named plaintiffs to bring a class action. ECF No.

15

21, PageID.1063. Plaintiffs agree that they must have viable state law warranty claims to bring their MMWA claim; they disagree regarding the lack of class action jurisdiction and indicate that they have jurisdiction under the Class Action Fairness Act ("CAFA"). ECF No. 24, PageID.1406-07. GM does not seem to contest that Plaintiffs do have jurisdiction under CAFA. ECF No. 25, PageID.1521.

On the first point, GM is correct. The MMWA only provides a federal cause of action for consumers who are damaged by a failure to comply under a state warranty statute; MMWA claims therefore "stand or fall" with valid state law warranty claims. *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1017 (E.D. Mich. 2017). Therefore, any Plaintiffs who have viable state law warranty claims might also have viable MMWA claims. On the flip side, Plaintiffs with Old GM vehicles cannot bring state-law IWM claims, and therefore cannot bring MMWA claims. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 986 (N.D. Cal. 2014) ("Accordingly, the Court concludes that the MMWA claim is dismissed in part—more specifically, to the extent the Court has dismissed any of the state express and implied warranty claims."). Here, only Plaintiffs Beck and Pelletier, who bought New GM cars, have viable MMWA claims. Accordingly, as discussed above, the nationwide MMWA claim (Count I) only survives as to Plaintiffs Pelletier and Beck.

16

Regarding jurisdiction, this Court has previously held that if proposed class action plaintiffs have jurisdiction under CAFA, they do not also need to meet the MMWA's jurisdictional requirement of 100 named plaintiffs to bring an MMWA claim. *Chapman*, 531 F. Supp. 3d at 1305. The Court acknowledges that this issue has not yet been addressed in a published Sixth Circuit opinion but believes that its prior reasoning is still sound. *See also In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, No. 18-MD-02818, 2021 WL 4972636, at *4 (E.D. Mich. Oct. 26, 2021) (summarizing caselaw regarding the conflict between MMWA plaintiff threshold and CAFA jurisdiction). CAFA requires minimal diversity and at least $5 million in controversy, which Plaintiffs sufficiently allege. ¶¶ 85-86, ECF No. 15-1, PageID.642-43. Therefore, the nationwide MMWA claim will not be dismissed on this ground as to the two remaining Plaintiffs.

## C.   Deficiencies in common law fraud claims

GM makes two broad categories of arguments related to Plaintiffs' common law fraud claims, which are alleged under the laws of 22 states. Having carefully reviewed the case law from the relevant jurisdictions, the Court finds that Count 37 (NJ) must be dismissed, and that Count 31 (MI) will be dismissed as to Plaintiff Beck only.

Claims for fraud must meet a heightened pleading standard laid out in Fed. R. Civ. P. 9(b). Additionally, fraudulent concealment claims can be alleged to involve either affirmative misrepresentations or

17

omissions. Plaintiffs omit any mention of affirmative misrepresentation in their briefing, which the Court takes as a concession that they cannot show fraud under that theory. For claims involving fraudulent omissions,

> Rule 9(b) requires that Plaintiffs plead "the who, what, when, where, and how" of the alleged omission. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012). Specifically, a plaintiff must allege "(1) precisely what was omitted; (2) who should have made the representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [defendant] obtained as a consequence of the alleged fraud." *Id.* Stating a claim for fraudulent omission also requires pleading a duty to disclose. *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013).

*Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 705 (E.D. Mich. 2020). This is also known as the "who, what, when, where, and how" standard.

GM argues for a variety of reasons that Plaintiffs (1) do not meet the Fed. R. Civ. P. 9(b) heightened pleading standards for fraud claims by not sufficiently alleging the "who, what, when, where, and how" of their claims and (2) do not sufficiently allege a duty to disclose. Plaintiffs argue that they do sufficiently plead fraud under the standard for omission. ECF No. 24, PageID.1410-13.

### 1. Sufficiency of 9(b) allegations

GM first argues that Plaintiffs cannot meet the "who, what, when, where, and how" particularity standard required by Fed. R. Civ. P. 9(b). ECF No. 21, PageID.1065-68. Although the allegations are very thin, in

the final balance the Court disagrees and finds that Plaintiff's claims of fraud are sufficiently pled.

Beginning with "who" and "what," Plaintiffs allege that Defendant has been aware of the defect in LS7 engines that results in a propensity for the engine to experience "excessive valve guide wear" which can result in injury and expensive repair costs. ¶¶ 3-5, 7. Despite alleged internal knowledge of this issue, they say Defendant has failed to ever issue a recall related to this defect. ¶ 10. The production of the LS7 engine began under Old GM. Importantly, therefore, Plaintiffs allege this defect was not only "well-known by Old GM" but also that it "was and is known by New GM." ¶¶ 1, 2, 7-9.

Plaintiffs' "when and where" are not related to a specific incident, promotional material, or recall, but rather describe a course of conduct over years where GM and its representatives have attempted to minimize or mischaracterize the nature of the defect. ¶¶ 8-12. In addition to "statements made through New GM dealerships . . . that the subject engines were performing as designed,"[7] Plaintiffs point to several online

---

[7] For example, Plaintiff Bain went to a GM dealership after his check engine light turned on. The dealership made repairs to one engine cylinder and then represented that his car had no other issues. Bain's engine suffered a catastrophic failure the next day. ¶ 72. Plaintiff Krause was told by representatives at a Michigan dealership that nothing in his engine was outside GM specifications; he subsequently obtained a second opinion from an independent performance shop, who tested his engine values and found that all of them were outside of GM spec. ¶¶ 50-52.

forum posts. In the first, dated February 18, 2015, GM engineers Tadge Juechter and Jordan Lee indicate that "we have been monitoring the LS7 since it was introduced" and describe a manufacturing defect "from July 2008 to March 2009" that led to oversized cylinder heads in LS7 engines (a defect that could lead to valve guide wear). It goes on to note that "most of the heads made in this time frame are indeed within specification." Another forum post dated October 11, 2012 from a GM customer service representative indicates that the valve guide issue "affects a small, number of '08, 09 '10 and '11 Z06's," was "discovered . . . through our cylinder head warranty data," and was due to a "machining error in the valve guide . . . at our head supplier." This post also asserted that the "quality issue has been contained as of Feb 2011." Plaintiffs point to the contradictions in these public statements and the attempts to minimize the issue as evidence that GM was misleading customers about the true nature and scope of the defect.

As for the "how" this defect led to injury, Plaintiffs from each state sub-class indicated that if they had known about this defect, they would have paid less for or not bought or leased their cars at all. *See, e.g.*, ¶¶ 205-206 (Arizona Plaintiffs' allegations regarding injury).

Taking Plaintiffs' allegations as true, they have sufficiently alleged the "who, what, when, where, and how" of their injuries such that they—perhaps just barely—meet the heightened pleading standard of Fed. R. Civ. P. 9(b).

**2. Failure to allege a duty to disclose**

Having concluded that Plaintiffs sufficiently plead fraud by the terms of Fed. R. Civ. P. 9(b), the Court must next consider whether Plaintiffs have sufficiently alleged that GM had a duty to disclose the information they say it concealed, because such an allegation is required for fraudulent concealment or "fraud by omission" claims. Even if GM did know about a defect and *could* have said something to consumers, if it did not have a duty to do so, it cannot be held liable for any fraudulent omissions. GM pursues two broad categories of argument regarding the failure to allege a duty to disclose.

First, knowledge. A fundamental requirement of alleging a duty to disclose is sufficiently alleging that the defendant *knew* about the information in question: a defendant cannot be held liable for failing to share knowledge it never possessed. Here, the allegation is that GM knew that something was wrong with the LS7 engine design, resulting in valve guide wear. What evidence do Plaintiffs point to regarding knowledge? Primarily, they rely on the blog posts already cited, where GM (as early as 2012, and again in 2015) publicly acknowledged some valve guide-related issues with the LS7 engine.[8] One of these posts also contains a

---

[8] C6 Z06 Question for Tadge Juechter, Corvette Forum, https://www.corvetteforum.com/forums/ask-tadge/3609003-answered-c6-z06-question-for-tadge-juechter.html;

statement from GM's Chief Engineer for these vehicles indicating that "we have been monitoring the LS7 since it was introduced." This evidence of monitoring by Defendant creates a plausible inference that if, as Plaintiffs allege, the problem was more wide-spread, GM was aware.[9] *See, e.g., Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 792 (E.D. Mich. 2019) ("In fact, accepting as true Plaintiffs' allegations . . . and in light of how rigorously Juechter says GM track-tests the car, it would be implausible to infer that GM was not aware of the car's alleged defective cooling system as a result of its testing."). The Court notes that this type of circumstantial evidence—as opposed to some kind of "smoking gun" admission by GM—makes it impossible to pin down exactly when GM became sufficiently aware of any defect such that it would give rise to a duty to disclose. Further discovery on this matter might affect the viability of certain claims depending on when subject vehicles were

---

GM Response to LS7 Valve Guide Issue Summary Confirmed, Corvette Forum,         https://www.corvetteforum.com/forums/c6-corvette-zr1-and-z06/3121662-gm-response-to-ls7-valve-guide-issue-summary-confirmed.html.

[9] Plaintiffs also cite to an article by automotive reviewer Hib Halverson for the Corvette Action Center website. *See* Hib Halverson, "Ruthless Pursuit of Power: Lucky Seven Edition: The Mystique of the 7-Liter, 7000-RPM, LS7," p. 17-22, Corvette Action Center (Updated November 2014), https://perma.cc/D3ZL-ZKJF. The article notes that in mid-2102, GM "acknowledged the LS7 valve guide wear controversy," citing public statements made by GM engineers as well as the forum blog posts, and notes that GM's public-facing explanations for the reason behind any LS7 engine failures have been "conflicting and confusing."

manufactured; for now, the allegations in the Complaint raise a plausible inference of knowledge and the Court will not dismiss any claims on this ground.

Second, state-specific arguments about the duty to disclose. GM argues that the laws of MI, FL, TX, GA, VA, NJ, and AL all require a confidential or fiduciary relationship between parties as a prerequisite to the finding of any duty to disclose. While this is true of the law in some states, many also create exceptions to this requirement based on the nature of the defect, with some making an exception if the defect is "latent" or difficult for a consumer to discover on their own. The Court will address the law regarding a duty to disclose in each of the challenged states, and indicate whether the motion to dismiss fraudulent concealment claims should be granted as to that state sub-class.[10]

| State | Authority | Conclusion |
|-------|-----------|------------|
| MI | GM argues no duty to disclose when bought from a dealer. <br><br> Plaintiffs cite *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 553 (W.D. Mich. 1998) (duty to disclose can arise if "one party possesses superior knowledge, not readily | Deny Motion to Dismiss: Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough |

---

[10] GM also makes arguments related to whether Plaintiffs sufficiently allege active concealment, partial representations, and the existence of safety issues with the cars. ECF No. 21, PageID.1072-74. These arguments are only relevant for certain states' definitions of what circumstances give rise to a duty to disclose, and their consideration is therefore incorporated into the state-specific analysis.

| | | |
|---|---|---|
| | available to the other and knows that the other is acting on the basis of mistaken knowledge"). | to allege GM's superior knowledge at this stage. |
| FL | GM argues no duty to disclose when bought from a dealer.<br><br>Plaintiffs cite *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 638 (E.D. Mich. 2019) (duty to disclose can arise under Florida law when manufacturer has "superior knowledge" of an alleged defect) (quoting *Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 WL 5574626, at *13 (D.N.J. Oct. 9, 2013)). | Deny Motion to Dismiss: Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's superior knowledge at this stage. |
| TX | GM argues no duty to disclose.<br><br>Plaintiffs cite *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1369 (N.D. Ga. 2013) (finding that under Texas law, there is a duty to disclose when "1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact."). | Deny Motion to Dismiss: Plaintiffs make allegations in ¶ 966 of the Amended Complaint that meet this standard. |

| GA | GM argues no duty to disclose.<br><br>Plaintiffs cite *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) (there is an "obligation to communicate where there is a concealment of 'intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.'"). | Deny Motion to Dismiss: Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's superior knowledge at this stage. |
|----|----|----|
| VA | GM argues no duty to disclose when bought from a dealer.<br><br>*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1011 (N.D. Cal. 2018) ("superior knowledge" creates a duty in VA). | Deny Motion to Dismiss: Plaintiffs' allegations regarding the latent nature of defect, which would make it difficult for them to uncover it on their own, are enough to allege GM's superior knowledge at this stage. |
| NJ | GM argues no duty to disclose, citing *Green v. G.M.C.*, No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003) (no duty to disclose when no fiduciary relationship or special reliance).<br><br>*See also In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *20 (D.N.J. May 8, 2017) (duty to disclose when defendant makes a partial disclosure). | Grant Motion to Dismiss: New Jersey only recognizes a duty to disclose when there is a fiduciary relationship or when defendant has made a partial disclosure, neither of which Plaintiffs allege they can show. |

| AL | GM argues no duty to disclose "absent a confidential relationship." *See Freightliner, L.L.C. v. Whatley Cont. Carriers, L.L.C.*, 932 So. 2d 883, 891 (Ala. 2005) (holding that when there is no fiduciary relationship, courts should evaluate "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances" to determine whether there is a duty to disclose). | Deny Motion to Dismiss: Plaintiffs plausibly allege special circumstances under Alabama law such that dismissal is inappropriate at this stage. |
|---|---|---|

One final note: GM makes a fact-based argument regarding the duty to disclose under Michigan law to argue for dismissal of Michigan fraudulent concealment claims. GM argues, and Plaintiff concedes, that there is no duty to disclose under Michigan law unless plaintiffs (1) make "specific inquiry" about the allegedly defective component and (2) GM gives a misleading or incomplete response (essentially, an affirmative misrepresentation). *See also Matanky*, 370 F. Supp. 3d at 794. Plaintiffs argue that they did make such inquiries. ECF No. 24, PageID.1416-17.

There are three Michigan Plaintiffs: Krause (¶¶ 50-52), Juszwik (¶¶ 53-56), and Beck (¶ 57). Based on the allegations in the Amended Complaint, Krause and Juszwik clearly made specific inquiries about this defect—Krause even filed a warranty claim with GM. But Plaintiff

Beck does not allege making any inquiries of GM regarding his vehicle. The practical result of this is that Beck cannot bring a fraudulent concealment claim under Michigan law, and Count 31 must be dismissed as to him.

### D.   Viability of claims due to the economic loss doctrine

The economic loss doctrine states that purchasers of defective products should not be able to recover in tort if their damages are purely economic. Each state recognizes a version of this doctrine with its own unique contours and exceptions. GM argues that the economic loss doctrine, as applied in the states at issue in this case, requires dismissal of Plaintiffs' tort claims for negligence and fraudulent concealment. Plaintiffs do not challenge that the damages in this case are economic only, but argue in a somewhat conclusory manner that this doctrine does not bar their claims in any of the states in question. ECF No. 24, PageID.1407.

As already noted, Plaintiffs allege in Count 2 a negligence claim purportedly on behalf of all the state sub-classes, and 22 separate fraudulent concealment claims, one for each state. These would be tort claims subject to attack under the economic loss doctrine. Having considered the impact of the economic loss doctrine as applied under the state law governing these 23 claims, the Court concludes that Count 2,

the negligence claim, is viable only for Arizona Plaintiff Cannon, and that 5 of the counts charging fraudulent concealment will be dismissed.[11]

### 1. Negligence claims barred by economic loss doctrine

As stated above in Section A, only Plaintiffs who purchased New GM vehicles can allege viable negligence claims. The Plaintiffs who purchased New GM vehicles and who therefore can allege a negligence claim are: Cannon (AZ), Ward (KY), Pelletier (MA), Beck (MI), Woodall (AZ), and Lanz (AZ). The Court must therefore apply the relevant authority, whether from the Parties' briefing or from its own independent research, regarding the application of the economic loss doctrine in Arizona, Kentucky, Massachusetts, and Michigan to determine whether any of these claims survive.

| State | Best authority | Conclusion |
|---|---|---|
| AZ | *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 324, 223 P.3d 664, 668 (2010) ("the economic nature of the loss is only one factor in a three-part test to determine whether tort remedies will be available: a court must also consider whether the defect was 'unreasonably dangerous' and whether the loss occurred in a 'sudden, accidental manner.'"). | Deny Motion to Dismiss: Arizona does not categorically bar tort recovery in economic loss-only situations. |
| KY | *Travelers Prop. Cas. Co. of Am. v. Rapid Power Corp.*, No. 5:12-CV-00038-R, 2013 WL 1898833, at *3 (W.D. Ky. May 3, | Grant Motion to Dismiss |

---

[11] Counts 13 (FL), 18 (IL), 31 (MI), 46 (PA), and 63 (WI).

| | | |
|---|---|---|
| | 2013) ("the rule bars . . . claims for negligence and strict products liability"). | |
| MA | *O'Leary v. New Hampshire Boring, Inc.*, 323 F.R.D. 122, 127 n.1 (D. Mass. 2018) ("the economic loss doctrine 'bars recovery for ordinary negligence claims in the absence of personal injury or property damage'"). | Grant Motion to Dismiss |
| MI | *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 690 (Mich. 2005) ("a plaintiff must demonstrate a present physical injury to a person or property in addition to economic losses . . . in order to recover under a negligence theory"). | Grant Motion to Dismiss |

Because the application of the economic loss doctrine knocks out the Plaintiffs from KY, MA and MI, Count 2 (the negligence claim) survives only as to Plaintiff Cannon of Arizona, and is dismissed as to all other Plaintiffs.

### 2. Fraud claims barred by economic loss doctrine

GM also contends that the economic loss doctrine in 10 states (AZ, CA, FL, IL, KY, MI, NJ, PA, TX, and WI) operates to bar fraud claims, so that the claims for fraudulent concealment brought under the laws of these states must be dismissed. ECF No. 21, PageID.1064-65. Plaintiffs concede this point as to the laws of FL, PA, and WI, but argue that other states have exceptions that would permit the fraudulent concealment claims to continue. ECF No. 24, PageID.1407-09. The Court will therefore

cite the authority, whether from the Parties' briefing or from its own independent research, that it finds most persuasive regarding the application of the economic loss doctrine to fraud claims in these states to determine whether any of these claims survive.

Again, fraud claims can involve either (1) intentional or affirmative misrepresentations or (2) fraudulent concealment or omissions. Here, Plaintiffs bring their fraud claims only under the second theory— fraudulent concealment or omissions. This is a significant distinction because the law of some states creates an exception to the economic loss doctrine for *intentional* fraud cases only. So, that exception to the economic loss doctrine would not be available to Plaintiffs because they do not plead intentional fraud.

| State | Best authority | Conclusion |
|-------|----------------|------------|
| AZ | *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 Ariz. 320, 324, 223 P.3d 664, 668 (2010) ("the economic nature of the loss is only one factor in a three-part test to determine whether tort remedies will be available: a court must also consider whether the defect was 'unreasonably dangerous' and whether the loss occurred in a 'sudden, accidental manner.'"). | Deny Motion to Dismiss: Arizona does not categorically bar tort recovery in economic loss-only situations. |
| CA | *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC,* No. 14-CV-02349-TEH, 2015 WL 1548872, at *7 (N.D. Cal. Apr. 7, 2015) (citing California caselaw indicating that economic loss doctrine | Deny Motion to Dismiss |

|  | | |
|---|---|---|
|  | bars tort recovery unless there is damage to "other property," which requires a detailed factual analysis of whether component parts of an engine are integrated or not and is therefore better addressed at a later stage in the proceedings). |  |
| IL | *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88, 435 N.E.2d 443, 452 (1982) ("economic loss is recoverable where one intentionally makes false representations"). | Grant Motion to Dismiss |
| KY | *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 687 (E.D. Mich. 2020) (collecting cases regarding application of the economic loss doctrine in Kentucky to fraudulent omission claims). | Deny Motion to Dismiss |
| MI | *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, Inc., 532 N.W.2d 541, 544 (Mich. Ct. App. 1995) (holding that only fraud in the inducement claims create an exception to the economic loss doctrine). | Grant Motion to Dismiss: Plaintiffs are only able to sufficiently plead fraudulent omission, which is distinct from fraud in the inducement. |
| NJ | *Coastal Grp., Inc. v. Dryvit Sys., Inc.*, 643 A.2d 649, 652 (N.J. Super. Ct. App. Div. 1994) (recognizing a broad fraud exception to the economic loss doctrine). | Deny Motion to Dismiss |
| TX | *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 816 (Tex. App. 2006) (finding a fraudulent inducement exception to the economic loss doctrine under Texas law). | Grant Motion to Dismiss: Plaintiffs are only able to sufficiently plead |

| | | fraudulent omission, which is distinct from fraud in the inducement. |
| --- | --- | --- |

Based on this analysis, the fraudulent concealment claims in FL (Count 13), PA (Count 46), WI (Count 63), IL (Count 18), and MI (31) will be dismissed.

### E.   Consumer protection claims

GM lastly makes five state-specific arguments for dismissal of state consumer protection claims. Of the 24 consumer protection counts, based on the applicable caselaw and analysis the Court will dismiss three.[12]

### 1. Sufficiency of consumer protection claim allegations

GM begins with a general argument through which it seeks dismissal of every consumer protection claim. It states that in general, state consumer protection statutes have the same heightened pleading standard as Fed. R. Civ. P. 9(b), so if the Court finds that Plaintiffs have not sufficiently pled fraud, these state claims will also fail.  ECF No. 21, PageID.1074. Plaintiffs merely reply that they do meet the 9(b) standard. ECF No. 24, PageID.1417.

Although each states' consumer protection statutes are different, at a minimum they all do require deceptive conduct, reliance, and causation to be pled with the same level of particularity required by Fed. R. Civ. P.

---

[12] Counts 8 (CA), 24 (MD), and 15 (GA).

9(b). *See, e.g.*, *Matanky*, F. Supp. 3d at 797. Given that the Court has already found Plaintiffs meet this heightened pleading standard, consumer protection claims will not be dismissed on this basis.

### 2. California claim (Count 8) barred by law

GM argues that Count 8 under California's Unfair Competition Law must be dismissed because there are other adequate legal remedies available. ECF No. 21, PageID.1075. Plaintiffs concede this. ECF No. 24, PageID.1417 n.10. Count 8 is therefore dismissed.

### 3. Maryland Plaintiff does not allege the required "cognizable injury" (Count 24)

GM argues that to assert a claim under the Maryland Consumer Protection Act, there must be a "cognizable injury" that is "objectively identifiable." ECF No. 21, PageID.1076. Plaintiffs argue that they have alleged the engine has defects which result in "expensive testing and repair," satisfying the Act's requirements. ECF No. 24, PageID.1417-18.

To show a "cognizable injury," "the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007). The Maryland Plaintiff's factual allegation in full is as follows:

> Plaintiff David Penrod (hereinafter "Penrod") is a resident of the state of Maryland. Plaintiff is the owner of a 2006 Corvette Z06 vehicle with an LS7 engine. The vehicle was purchased on March 3, 2012.

33

¶ 48, ECF No. 15-1, PageID.630.

Plaintiffs point to allegations in other parts of the Amended Complaint regarding expenses for testing and repair that could amount to an injury, but the Maryland standard indicates that there needs to be some identifiable loss specific to *this* consumer. But the Maryland Plaintiff does not allege any costs or injuries that he himself incurred as connected to his ownership of this vehicle. Therefore, Count 24 is dismissed.

### 4. Oklahoma Plaintiff's claim (Count 42) is time-barred

GM argues that the Oklahoma consumer protection statute has a 3-year statute of limitations, and that Oklahoma Plaintiff Shepherd did not file his claim until well outside that period. ECF No. 21, PageID.1076. Plaintiffs cite the discovery rule exception, arguing that there is no way Plaintiff could have "discovered in the exercise of reasonable diligence" this defect, given its hidden nature, and that therefore his statute of limitations should be tolled. They also state that the question of whether the discovery rule exception should apply to him or not should be a jury question. ECF No. 24, PageID.1418.

Plaintiff Shepherd states that he brought his car to a dealer when it began to experience a ticking noise. The vehicle was repaired, and he was told there was no further issue, but it continued to exhibit the same noise. He eventually experienced a catastrophic failure. ¶¶ 63-67, ECF No. 15-1, PageID.635-36.

The Oklahoma Supreme Court has stated that "acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations . . . because a reasonably prudent person is required to pursue his claim with diligence." *Daugherty v. Farmers Co-op. Ass'n*, 689 P.2d 947, 950-51 (Okla. 1984). Whether Shepard's situation falls within this rule is a question of fact for the jury. Taking the allegations in the complaint as true, a jury could find that the continued ticking noise alone was not "sufficient information" to start his statute of limitations clock running, particularly when combined with the fact that the dealership explicitly told him there was nothing else wrong with his car. The Court will deny the Motion as to Count 42.

### 5. Georgia Plaintiffs lack standing (Count 15)

Lastly, GM argues that Plaintiffs lack standing under the Georgia Uniform Deceptive Trade Practices Act, because injunctive relief under that statute is only available to consumers "likely to be damaged by a deceptive trade practice of another." *See Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 800 (E.D. Mich. 2019). Plaintiffs argue that there is an ongoing risk of failure in these cars, satisfying the standard for injunctive relief. ECF No. 24, PageID.1418.

The Court is persuaded by Judge Roberts' analysis in *Matanky*—because the GUDTPA is specifically about "trade practices," the fact that the valve guide defect could appear in a car at some point in the future is

not enough to make a claim given the statute's conception of future harm *resulting from* deceptive trade practices. There is no ongoing deceptive trade practice GM is alleged to be engaging in that could lead to liability: similar to the plaintiffs in *Matanky*, these Plaintiffs have already bought these cars, are aware of the defect in them, and do not allege they are planning to buy another car. *See* 370 F. Supp. 3d at 800-01. The Court will therefore dismiss Count 15.

## CONCLUSION

For all of the foregoing reasons, the Motion to Dismiss (ECF No. 21) is **GRANTED IN PART** and **DENIED IN PART**. Of the 63 claims, 21 are dismissed with prejudice, 1 is dismissed without prejudice and 41 survive wholly or partially. For convenience, the Court attaches a Table of Claims containing a summary describing according to the Count numbers which claims survive which are being dismissed. The Table of Claims is hereby incorporated in this Order and its terms articulate the ruling of the Court on Defendant's Motion to Dismiss.

**IT IS SO ORDERED,** this 31st day of March, 2022.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

36